By the Court,

Cowen, J.
The points now raised by the plaintiff in error, all grow out of the evidence and proceedings at the trial, as if we were sitting to hear a bill of exceptions. The first is, that to give jurisdiction, the conventional relation of landlord and tenant must exist; and if the defendant below ever became tenant at will, it was by the operation of law; that the defendant below was tenant for life, under a title paramount to that of the plaintiff. Three points are raised on the objection to an admission of evidence, and one in respect to the obligation of Phillips to know the title under which he claimed; and that possession by the defendant below, or actual notice to Phillips and Ftnbler of the lease for life, was equivalent to a notice by record. The counsel have, among other things, gone into an elaborate argument upon the whole merits, even to a critical examination of the credibility of witnesses. Under some of their heads of argument, they have treated the return as if it were a case for a new trial on the weight of evidence. I think we have no power to follow them on any of these points. The regularity of the proceedings are not sought to be impeached; and it is not pretended that in the affidavits, summons and service, there is a want [467] of either the form or substance required by the statute to give the judge jurisdiction. ,The court below being possessed of the cause, and prima facie having jurisdiction and proceeding regularly with its process and continuances, all the rest relates to the merits. These include the evidence offered, its competency and effect, and the charge of the judge; and it is not the office of a common law certiorari, or even a writ of error, to bring up such matters for review. From a justice’s court it goes by'tlie special provision of a statute (2 R. S. 256, § 177; 6 Wendell, 566, per Savage, C. J., in Starr v. Trustees of Rochester). And a writ of error never reached the merits which lay beyond the record, till the statute gave a bill of exceptions (The People v. Dalton, 15 Wendell, 583, 4). The statute (2 R. S. 512, § 28) provides that any tenant or lessee at will or sufferance, may be removed in the summary mode now in question. The complainant’s affidavit before the judge follows in this instance the words of the statute. It states that the defendant below was the one or the other, and shows that the proper notice to quit had been served (1 R. S. 745, §7; 2 id. 512, 513, § 28, 31). Admitting that the defendant below might qualify the affidavit on the trial, by strong evidence that the relation of landlord and tenant arose by legal operation or construction; might show that it was conventional; and that this might be a jurisdictional objection fatal to the power of the judge—see per Savage, C. J., in Evertson v. Sutton, 5 Wendell, 284; and Roach v. Cosine, 9 id. 227, 231—the answer is that it does not appear in the proper place. The plaintiff’s affidavit, which is in the nature of a declaration or plaint, shows enough; and, for all the purposes of jurisdiction, it must conclude. Its truth is always open to examination before the jury, who, under the guidance of the judge, are entitled to decide without control, whether the case as insisted on by the plaintiff is established. In one sense, it may always be said that where the right set up or the injury charged in the declaration do not exist, the court *264 have no jurisdiction; but both appearing in the first instance, the whole subject passes into the hands of a court and jury, whose finding at such [468] stage, though upon what might have been at a previous stage a jurisdictional question, is conclusive. A contrary doctrine would draw everything into question on certiorari. That would be against the whole current of authorities. This writ is but an emanation. from the general supervisory duty of the supreme court to restrain the action of all inferior magistrates to matters wilhin their legal grasp. The matter is there when the proper plaint, process and person are before them. If they go wrong upon the evidence, it is the misfortune of the parties. The object of the law is to give them a final power over the merits upon the light class of litigation which it confides to them. Were these merits to be examined by us, they had much better come here originally, as being more cheaply, expeditiously and every way better examinable on hearing the witnesses, than they can possibly be upon the most perfect paper return.
The question upon the conclusive effect of the trial of a jurisdictional fact involved in an issue joined, after the fact shall have been so alleged as to give the court jurisdiction in form, was much considered in Kempe's lessee v. Kennedy (5 Cranch, 173). It was sought in that case to impeach the judgment of a court collaterally, as wanting jurisdiction of the case, because the crime which it tried had not been committed. Marshall, O. J., said: “ The court was constituted according to law, and if an offence punishable by the law had been committed, the accused was amenable to its jurisdiction. The question whether this offence was or was not committed, was a question which the court was competent to decide. The judgment it gave was erroneous, but it is a judgment, and, until reversed, can not be disregarded” (id. 186). In Betts v. Bagley (12 Pick. 572), it was objected that a commissioner of the state has no jurisdiction of an insolvent casé here, under our two-thirds act, because in truth two-thirds of his creditors in amount had not petitioned. The court answered, that is the very question which the commissioner was to try as a part of the merits. It being alleged in the petition, was enough to give him jurisdiction; and until the proceedings are reversed by certiorari, the certificate of discharge must conclude (per [469] Shaw, C. J., id. 582, 3). So here, the tenancy being alleged according to the statute, and put in issue by the defendant’s affidavit, that tenancy became the most important question which the judge and jury were called upon to try. They pronounced, on the evidence, in favor of the tenancy. They were competent to decide that question as part of the merits; and it follows that the decision can not be reviewed even by certiorari, unless the nature of the writ be such as to penetrate beyond to questions of jurisdiction or regularity.
That we can not review the decision of the jury upon the weight of evidence, it would be a waste of time to attempt to -prove by authority. The only question which can be made is, whether the decisions and charge of the judge can be noticed. In Nichols v. Williams (8 Cowen, 13, 16), which arose under this landlord and tenant act, as it stood in 1820 (Sess. Laws, p. 176), this court refused to notice the return so far as it respected the charge of the judge and the evidence. Savage, C. J., said: “ A certiorari, except to a justice’s court, brings up the record only, not the testimony;” and he puts himself therefore on the mere question of continuance or refusal to adjourn, a mere naked question of jurisdiction. In Lojj’t, 347, 8. a motion was made that beside the order, the justices should return the examinations before them. The court refused this, Aston, J., saying, “ We never oblige them to return to the certiorari evidence before them.” In Rex v. Whitbread (2 Doug. 549), and Rex v. Abbot (id. 553, note), a motion to allow a certioi ari was denied, because it was not founded on a want of jurisdiction, but on the merits." See *265 Anon., 1 Born & Adolph. 382. In Ex parte Vermilyea (6 Cowen, 355, 6,) Woodworth, J . refused to allow a certiorari, on the ground that the court below had erred in deciding upon the question of variance between the proof and the indictment. He said there was no mode of review, because error on a bill of exceptions (then) would not lie in a criminal case. Afterwards, The People v. Vermilyea (7 Cowen, 108, 136, 7), the return to the writ, which had been granted on other grounds, having presented this question of variance and the decision upon it in the court below, with the evidence, this court declined to notice it. Savage, C. J., said: “ We can not notice that part of the return which relates to the evidence. The testimony is no part of the record in the court below. It is not therefore removable either by writ of error or certiorari.” To these cases may be added the later one of Starr v. The Trustees of Rochester (6 Wendell, 564, 566). Savage, C. J., there denies that the power of this court on certiorari extends to an examination of the decisions of inferior summary jurisdictions on questions of fact; and he denies that they are to state facts in the return except such as respect their jurisdiction. Indeed, there can be no doubt of this upon the ancient authorities. The whole subject was considered very deliberately in Rex v. Oulton (Burr. Sett. Cas. 64). A struggle was made, for several terms, to compel the quarter sessions to return the result of the evidence, that the ground of their order might appear. But the king’s bench, after thinking much on the question and trying hard to devise some way to reach the case, gave it up, the sessions proving obstinate and refusing to state a voluntary case by consent. Lord Hardwicke and all the judges agreed, that the king’s bench could not look beyond the face of the order. From these authorities and others, I collect the following general rule: Wherever, were the suit at common law, the matter alleged for error is of such a nature that a bill of exceptions would be essential to its review by writ of error, a certiorari will not reach it unless some statute has enlarged the effect of that writ in the particular case. There is no such statute with respect to summary proceedings to recover the possession of land. The provision that this court “ may award a certiorari for the purpose of examining any adj udication made ” in virtue of the act (2 R. S. 516, § 47), is no more than what the common law had said before. The extent of our power to examine is not declared. Without an express enlargement, we can not go beyond the ordinary scope of such process,
Jt is not to be denied, however, that since this provision of the statute, we have in several instances assumed a more enlarged power, and gone into the merits. In Roach v. Cosine (9 Wendell, 227), this court appear to have examined the finding of the jury on the question of jurisdiction, [471J after that had been conferred by an affidavit, like the oné now in question. It stated a tenancy by sufferance or at will, p. 228. On the trial, the claim of the plaintiff below (as this court thought from the evidence) was established to be that of a mortgage, against the defendant as mortgagor. This depended on a mass of parol evidence, changing the character of a deed absolute on its face into a- mortgage. The jury found against the plain weight of evidence, and against the charge of the magistrate; and the question was discussed by counsel, as it has been here, without raising any point that the merits were not examinable in this form. A similar course seems to have been taken without objection in Brown v. Betts, (13 Wendell, 29). though the proceedings in that case were affirmed. A like course was pursued in Rowan v. Lytle (11 Wendell, 616), where the proceedings were reversed. When Nichols v. Williams (8 Cowen, 13, 16) was decided, the statute had not-expressly given a certiorari for the purpose of examining the adjudication, and the writ then stood on the common law. I have just remarked that the statute still leaves the effect of the writ the same *266 as before its passage. It merely declares what tnis court had before held in Lynde v. Noble (20 Johns. R. 80, 82), that the writ should lie in this particular case; and the revisers, in their note, do not pretend that it went any farther. They say merely “ conformable to 20 Johns. R. 82” (3 R. S. newed. 766, § 47).
But suppose I am thus far mistaken as to the law, or the application of the law to this case; let us look for a moment to the rights of the parties as presented by the testimony. It is not denied that Phillips, the plaintiff below, derived a complete title by the sheriff’s sale as against George 0. Bird sail, under the judgment of 1832. George C. Birdsall also conveyed to Phil lips by quit-claim in 1835. Benjamin Birdsall, the defendant below, answered by showing his 'lease for life from George C. Birdsall, in 1827. In reply to •that, ample evidence was given to prove that the lease was the sheerest fraud or forgery, and null at least as against George C. Birdsall’s creditors; and that to him, Benjamin was a mere tenant at will. He had not only [472] admitted such tenancy in conversation, but had sworn to it in a suit at law, and once admitted it in his answer in chancery. He sometimes called himself the mere agent of George C. Birdsall (who was his son), in the management of the property. The lease was voluntary and without consideration, given by a son to his father; and that son, who was the only witness called in its Support, a good deal impeached. It is objected that George C. Birdsall’s declarations were not admissible, the defendant below not being present. The answer is, George was a witness for his father, and his declarations went to impeach his testimony. Besides, I think the judge was right in taking his declarations against his father, on the ground that, when received, he might fairly be looked on as a co-conspirator with his father in the fraud set up to impeach the lease. As the jury were most clearly right in disregarding the lease for life, there remains no foundation for any of the other points. Nor can any of them be esteemed even plausible, except, perhaps, the very nice, not to say ungracious objection, that though the defendant below was, at the time of the sale on the execution, the mere tenant at will of George C. Birdsall, the debtor, he never held the relation of tenant to Phillips; but was, as to him, a naked wrongdoer. All relation of landlord and tenant is said-to have been destroyed by the quitclaim from George to Phillips, or if any such relation continued, it was by mere operation of law. In the first view, as insisted, it would be a variance from the title as specially set out in Phillips’s affidavit; and in the other, the judge would want jurisdiction, because the relation is not conventional, but by operation of law, and therefore within what Savage, C. J„ said in the case of Evertson v. Sutton (5 Wendell, 281). In favor of the first view, it is said that the quit-claim from George C. Birdsall, the original landlord at .will, made by him to Phillips, or by the sale in virtue of the fi. fa., determined the tenancy (Cruise, tit. 9, Estate at will ch. 1, § 15, et seq. p. 191, in ed. of 1823; 13 Johns. R. 109). That, I should think, may well be doubted, since the doctrine of notice to quit has taken such firm foothold with us (1 R. S. 745, § 7). At any rate it hardly lies' with the tenant to raise [473] this objection against the plaintiff’s election to consider him as a tenant al will or sufferance, instead of a tortfeasor, and serve him with. a month’s notice to quit. That he continued one or the other is, I think, clear. 1 Cruise, tit. 9. Estate at will, ch. 2, § 1, 2, p. 195 of ed. 1823. It is there said, that where a lessee at will continues in possession after the determination of his estate, he is a tenant at sufferance; a fortiori where the landlord elects to consider him so. See 11 Wendell, 619.
But the objection most strongly insisted upon is, that if the original tendency at will or by sufferance did continue, it was by mere operation of law. The words of the late chief justice in Evertson v. Sutton, are cited; *267 “The statute ” (then the act of 1820,) “ was clearly designed to afford a speedy remedy where the conventionable relation of landlord and tenant existed, and not where that relation is created by operation of law.” And it was truly said in argument, that a conventional relation arises from some stipulation agreement or compact to lease or hire the premises. The late chief justice was speaking of the relation between mortgagor and mortgagee, a case in which, for some purposes, the law raises the constructive, or rather quasi relation of landlord and tenant.' The same doctrine was put forward in this sense by the same learned judge, in Roach v. Cosine (9 Wendell, 227, 232). Be it as contended by the counsel for the plaintiff in error: I answer, here is enough evidence of stipulation, compact and agreement, as between George C. Birdsall and the defendant below. The plaintiff took all George’s rights; and surely it is not at this day to be doubted that the relation of landlord and tenant in the strictest technical sense exists, between the lessee and the assignee of the lessor: I add, in the strictest conventional sense, provided there was a convention between the original parties. The language of the late chief justice must be much forced should we make him say, “ all remedy under this statute is tied up to the original parties.” The words of the statute are, that any lessor or landlord may take this summary remedy against his tenant; not merely the lessor against the lessee (2 R. S. 512, 513, § 28).
Another view of the case is, I think, equally conclusive.- and sub- [474] stantially covered by the affidavit of the plaintiff below. The fourth subdivision of the 28th section (2 R. S. 513), gives this summary remedy to a purchaser “ where any person shall hold over and continue in the possession of any real estate which shall have been sold by execution against such person.” It is objected that the execution was against George C. Birdsall. and not against, the defendant. It was said by Woodworth, J. in Lynae v. Noble (20 Johns. R. 82),that “ This remedial act must be construed liberally', to carry into effect the intent by suppressing the mischief and advancing the remedy.” Looking at this part of the statute, in the correct spirit which dictated that remark, and see Revisor’s note (3 R. S. 765, 6, 2d. ed.), I think the case has arisen of a person holding over real estate after sale by execution against him. Surely, the statute did not mean a holding over by his own personal act; if he do it by his agent, servant or tenant at will, he may be equally said to hold over. The defendant below sometimes called himself the tenant at will or by sufferance of George C. Birdsall; sometimes his agent. He adheres to his possession, and George 0. Birdsall presents himself as a witness to sustain whatever character it may have been. He put his father in pos session; and evidently approved of his continuance: Qui facit per a Hum, facit per se. The statute may at any time be evaded, by a hasty and collusive change of personal possession from the debtor to his friend, if the strictness of construction contended for is allowed to prevail. I think it equally applicable to the judgment debtor and all who hold under him, under pretence of title acquired posterior to the judgment. It is doing no violence to the meaning of -the statute, when we impute to the debtor the act of one whom he has placed in possession by a contract in hostility to the claims of his creditor; one who shall persevere in such adverse claim, after the title of the purchaser under the execution shall have become perfected, especially were it is with the express privity arid consent of the debtor. In the case at bar, the jury were clearly warranted in identifying the defendant with his son, the assumed lessor, who had given the fraudulent lease [*475] and stood embarked in the struggle to maintain it.
In any and every view, therefore, I think the proceedings below should be confirmed.
Proceedings confirmed.