THE PEOPLE, *ex rel.* Porter, *vs.* THE CITY OF ROCHESTER.

The power of the supreme court to review the proceedings of municipal corporations, upon certiorari, is undoubted.

How far, and in what cases, the court will exercise this power, are questions addressed to its sound judicial discretion.

The writ is not a writ of right, like the writ of error at common law, but should always be, and generally is, allowed for good cause, and granted with great care and circumspection.

The writ should not issue to a municipal corporation to remove the proceedings upon an assessment for the construction of a bridge, without notice, and without a full opportunity for the respondents to show cause against it.

Under the 188th and 189th sections of the charter of the city of Rochester, before the common council can pass the final ordinance or determination to make any public improvement therein referred to, the following steps must be taken: 1. A petition must be presented to it, from a majority of the owners to be assessed for such improvement. 2. Notice of such application must be published 10 days, in two daily newspapers. 3. Some officer must be directed to make an estimate of the expense. 4. An entry must be made, describing the part or portion of the city to be assessed. 5. A notice of such improvement, the estimated expense thereof, and the portion of the city to be assessed therefor, and requiring all persons interested to attend at a time appointed, to show cause, &c., must be published.

As respects the first requirement, the common council must see, when it comes to order the improvement and fix the limits of the territory to be assessed therefor, that a majority of the owners of property to be assessed have in fact petitioned for the improvement in question.

If the common council has before it a petition, in the outset, and such petition is in fact ascertained by them to be signed by a majority of the owners of the property to be assessed, when the parts or portions of the city to be assessed

The People *v.* The City of Rochester.

for the improvement is fixed, that is a substantial compliance with the charter, and all the compliance practicable in such a case.

When the common council has referred the petitions to the appropriate committee, to ascertain the facts, and the committee has performed its duty, and made its report to the board, which is followed by a resolution of the common council, fixing the limits of the territory to be assessed, and asserting that a majority of the owners of the property to be assessed have petitioned for the improvement, the common council must be deemed to have duly ascertained and determined that fact; and their resolution declaring such fact is to be considered in the nature of a judicial finding *in pais,* on that subject. T. R. STRONG, J. dissented.

Enough being presented in the petitions, with the report of the committee of the common council thereon, to call upon the common council to exercise their judgment on the jurisdictional facts essential to entitle them to proceed to order the improvement, if they act thereon their decision is final and conclusive on that question. T. R. STRONG, J. dissented.

Persons omiting to raise the objection, before the common council, that the petitions presented to the common council do not in fact contain the signatures of owners of property to be taxed for an improvement, requisite in point of numbers and location to confer jurisdiction, when called upon by public notice from the common council to do so, are estopped from raising the objection afterwards.

The legislature intended that the action of the common council, upon and after the publication of the notice requiring all persons interested to attend at a specified time, and show cause against the making of the improvement, should be final and conclusive upon the question of the assent of a majority of the persons to be assessed.

And the supreme court, upon a common law certiorari, will hold the action of the common council conclusive upon all persons, in such a case, unless it clearly appears that there was an entire and palpable absence of *all evidence* tending to confer jurisdiction, before them. T. R. STRONG, J. dissented.

Where a petition, presented to the common council of Rochester, praying for a local assessment for the construction of a bridge, contains a suggestion in respect to the *territory* to be embraced in the assessment, such suggestion is not to be regarded as of the substance of the petition, or in the light of a condition, or in any respect binding on the common council.

CERTIORARI to review proceedings upon a local assessment for the construction of a bridge across the Genesee river. The facts appear in the opinion of the court.

*J. C. Cochran* and *S. Mathews,* for the relator. I. No presumption can be made in favor of inferior tribunals; their jurisdiction must appear on the face of their proceedings. (*Gran-*

*ite Bank* v. *Treat,* 6 *Shep.* 340.   *Barrett* v. *Crane,* 16 *Verm. R.* 246.   *Bennett* v. *Burch,* 1 *Denio,* 141.   *Staples* v. *Fair-child,* 3 *Coms.* 41.   *Wyman* v. *Mitchell,* 1 *Cowen,* 316.   *Gilbert* v. *The Columbia Turnpike Co.,* 3 *John. Cas.* 107.)

2. The common council is an inferior tribunal, and has no power or jurisdiction except what is expressly given by the statute. (*Hodges* v. *City of Buffalo,* 2 *Denio,* 110. *Graves* v. *Otis,* 2 *Hill,* 467, *see note p.* 468.   *Sharp* v. *Speir,* 4 *Hill,* 76, 83. · *Sharp* v. *Johnson,* 4 *id.* 92.)

3. And even in collateral proceedings the jurisdiction must be affirmatively shown.   (*See last two cases; Kennedy* v. *Newman,* 1 *Sand.* 187.)

4. This rule is especially enforced when the proceedings may divest the title to land, as in this case.   (*Charter,* §§ 225, 152, 153, 154, 155, *and see the above cases.*)

5. The common council had no power to proceed to make a local assessment for the bridge, unless first requested by a petition signed by a majority of the owners of property to be assessed.   (*Charter,* § 188, *as amended by Laws of* 1853, *p.* 24.)

6. There is no evidence whatever showing that the petitions —such as they were—were signed by a majority of the owners of property in the district assessed.   And this must be shown by the corporation, affirmatively.   (*See* 15 *Barb.* 286 ; 3 *Seld.* 428 ; 1 *id.* 568.)   The petitions were presented in June, and were referred to the street committee.   On the 7th August the chairman of that committee reported, " that they had carefully examined into the matter and ascertained that said petitions were signed by a majority of the owners of property to be assessed for the construction of such bridge."   This is all the evidence on the subject.   As the committee had nothing before them on the subject of boundary but the petitions, and as the common council had not then fixed any boundary, the committee must have alluded to the lines stated in the petitions or nothing.

7. This question of boundary was a jurisdictional fact.   It must have been fixed before the common council had power to act at all in the premises. (*See* 4 *Hill,* 87, 88, 9.)   Because, if the boundary was not definitely known, it would be impossi-

The People *v.* The City of Rochester.

ble to tell what number of petitioners would constitute a majority. It is absurd to say that the common council could fix the boundary before they had acquired jurisdiction, or that they could thus give themselves jurisdiction by passing a resolution. (2 *Kernan,* 578.)

8. If then the common council must know the boundaries to be assessed, in order to determine the question of majority, it necessarily follows, that there are only two ways in which the boundaries of a local assessment can be fixed: (1.) Where it is determined by law, as in the case of opening a local street. (2.) In all other cases it must be fixed by the petition itself.

9. In this case the law does not fix any boundary, and it could only be determined by the petitions themselves

10. As the petitions all specify different boundaries, and as no one boundary is agreed upon by a majority, the petitions are all void as a basis of jurisdiction.

11. Besides, the common council arbitrarily fixed a boundary, differing from all the petitioners, thus releasing all the signers. (*See Graves* v. *Otis,* 2 *Hill,* 466; *see also Sharp* v. *Speir,* 4 *id.* 87, 88.)

12. There was no evidence showing that the persons signing the petitions owned a foot of land in the district assessed. They do not even describe themselves as owners. They may pay taxes as occupants or owners of personal property. (*See* 4 *Hill,* 97.)

13. The petitions were presented in the month of June, and asked to have a tax levied not exceeding $7000, in addition to the amount *then appropriated,* and suggesting certain boundaries for the assessment. On the 7th of August following, the common council complied with the prayer of the petitions so far as to raise $5000 for the bridge, but making it a general tax. The petitions thereby became *functus officio,* and could not be used as the basis of further action. We cannot presume that the petitioners desired to have from $12,000 to $16,000 appropriated for the bridge instead of $7000.

14. The common council also, by their resolution of August 7, show that they did not pretend to make the petitions in any

way the basis of further action. (1.) They prescribed boundaries differing from the petitions. (2.) They determined to raise $11,000 instead of $7000, besides the $5000; making $16,000 in all.

15. The legislature having passed a special act, conferring special authority on the common council in regard to this particular bridge, and limiting the amount to be raised, repealed by implication the power of the common council to raise money in any other way, or for any larger amount. When the $5000 was raised their power was exhausted. (*Laws* 1855, *p.* 827, § 3.) The general act gives the common council power to *construct bridges.* (*Charter*, § 185.) But in regard to this bridge they only have power to *aid* in constructing, (as it is a county and city bridge,) and that to the extent of $5000. (2 *Kernan*, 220.) The fact that the legislature have stated how they shall raise the money, does not give by implication, power to raise more money in some other way.

16. The petitions are also void because they do not request the improvement to be made, but merely ask that a tax be levied. The requirements of the statute must be strictly complied with. (*Charter*, § 188, *as amended ; Laws of* 1853, *p.* 24.)

*John C. Chumasero*, for the defendants. 1. The remedy chosen by the relator is not the proper one, for various reasons. A certiorari will not lie to any inferior tribunal, except to remove proceedings which *still remain* before it. (1 *Hill*, 198.)

In this case the common council have *taken all the proceedings* which the nature of the case admits of; their action in this matter is *spent*, and the matter has so far passed from their hands, that they have no further control. The assessment is in the hands of the treasurer for collection ; none of the proceedings now remain before the common council. (2 *Hill*, 9.) And this writ will not lie to a ministerial officer, (*e. g.* a collector of taxes,) for the purpose of examining his right to proceed upon process under which he is acting. (1 *Hill*, 198.) Nor will a writ of prohibition lie in such a case. (*Id.*)

2. The court will not, for prudential reasons, unless an impe-

The People v. The City of Rochester.

rious necessity exists, allow or sustain the writ, especially where the party has his remedy by action; and even in some cases where such remedy does not exist it has been refused. (1 and 2 *Hill, before cited.*)

3. This court will not try the question of fact; and as the return shows conclusively that the common council has jurisdiction, it is a full and perfect answer to the affidavit of the relator, even if such affidavit is to be taken into consideration on the argument, which we deny, its object and purpose being merely to furnish evidence upon which to found the writ, which is its only legitimate object.

4. The question whether the petition for the improvement was a majority petition, was entirely within the province of the common council to decide. This they have decided, and that after making every reasonable effort to ascertain the fact, and using all the means within their power for that purpose.

5. Section 188 does not apply to bridges. The language must be construed in *pari materia;* and besides, it only applies to mere local assessments. (*Vide* § 188 *in connection with* § 190.) Section 184 gives the common council general jurisdiction, and if applicable at all, § 188 merely limits its exercise.

6. If the assessment in question be void for any reason, this not being a writ of right, but of favor merely, the parties complaining should be left to their remedy by action. As the facts are now presented, but one objector appears : *non constat* but that all the other persons assessed are ready and willing to pay their assessed share of the improvement for which so many have petitioned ; and this court will not, for prudential reasons alone, declare the assessment void, under these proceedings, but leave each party to contest the same or not, as he may deem best. (5 *Barb.* 43. 15. *Wend.* 195.) And there is the strongest evidence that all the other parties assessed are satisfied, for it appears by the return, that although notice of the hearing of appeals under section 218, was duly given and published, no one appeared to oppose, and the assessment was ratified and confirmed without opposition ; and § 219, is in these words, "Every assessment so ratified and confirmed by the common

council, shall be final and conclusive." We submit, that the party not appearing to oppose, waived all objections, and conceded the correctness and validity of the proceedings, and cannot now complain. In the case of assessors, acting as a judicial body, the revised statutes exempt certain property from taxation, *e. g.* a portion of the property of ministers of the gospel, yet if the assessors tax property exempted by statute, and over which they have no jurisdiction, this court will not interfere.

The party by not appearing to contest waives his rights.

*W. F. Cogswell,* same side. 1. The return is conclusive; and unless it shows a want of jurisdiction the proceedings will not be disturbed. (20 *Wend.* 625.)

2. Nothing appears upon the return that shows a want of jurisdiction. For aught that appears, the only persons who own property to be assessed, are the subscribers of the several petitions.

3. The suggestion contained in the petition is a mere recommend to the common council, as to the territory to be assessed. No condition is imposed or sought to be. The petitioners desire the improvement, and their suggestion is put in for the consideration of the common council.

4. The territory assessed is that suggested by sundry of the petitioners, and the court cannot see that the petitioners whose suggestion is thus heeded, are all the property owners of the district thus to be assessed, much less that they are not a majority.

5. The section (188) of the city charter, which it is supposed limits the action of the defendant, has no reference to such an improvement as the building a bridge over the Genesee river. It refers only to purely local improvements, of a kindred nature with those specifically named in the section. "Other expensive works," must be construed in *pari materia* with streets, lanes, alleys and sewers, &c.

6. If section 188 is applicable to the case before the court, then, as the jurisdiction of the common council depended upon matters which they were to ascertain and decide, in relation to

The People *v.* The City of Rochester.

which there is not only no requirement that proofs shall be taken, but no power or way of taking proofs that can be certified, their action is conclusive. (1 *Selden,* 568. *Opinion of Ruggles, J.* 572. 1 *Brod. & Bing.* 432. 2 *Virg. Cases,* 268. 23 *Wend.* 277, 288. 5 *Burn's Justice, Chitty's ed.* 340.)

7. If this action is not conclusive, as there is no possible way that the court can be certified of the evidence of the facts upon which the common council decided, the remedy of the relator, if he considers himself aggrieved, is misconceived. (17 *Wend.* 464. 23 *id.* 277.) The case in 2 Hill, 88 and 92, and 4 Hill, was an action where the court can inquire into extraneous facts by trial before jury. Here there is no way of trying the facts.

8. This court will not undertake to supervise the proceedings of a public or private corporation on certiorari, but will leave the parties aggrieved to their remedy by action. (2 *Hill,* 9. *Id.* 14. 23 *Wend.* 277.)

9. A certiorari will never be issued where there is another remedy. (1 *Hill,* 674. 5 *Hill,* 264.) Nor when the public exigencies require that it shall be withholden.

10. Notice of the intended improvement having been given, and all parties having been required to show cause, and no one appearing to oppose, all persons will be regarded as having had their day in court, and the action of the common council holden final; or 2d, as having assented that the petition was that of a majority. Good faith will not permit them to lie by until large expense has been incurred, and the liability of the city fixed by a large contract, the advantage of having the bridge built secured, and then come forward with an objection for the first time, which they should have urged *in limine.* To allow this would be to allow the relator to set a trap for the common council. "He that is silent when conscience requires him to speak, shall not be heard to speak when conscience requires him to be silent."

11. Section 188 is repealed *quoad* this improvement, if it ever applied by section 3 of the act amending the charter, passed April 13, 1855.

SMITH, J.   The office of a common law certiorari is to bring up for review the proceedings of subordinate tribunals, that this court may see that such tribunals keep within the limits of their acknowledged jurisdiction.   Since the decision of *Birdsall* v. *Phillips*, (17 *Wend.* 464,) the court has been accustomed in examining the return to these writs, to confine its decisions to mere *jurisdictional facts*, although in respect to proceedings between landlord and tenant, and under the insolvent acts, and other cases where the statute gives the writ, it has been since repeatedly held that the return properly brings up for review the subsequent legal decisions and the final adjudication.   Such is now the settled law, by the decision of the court of appeals in *Morewood* v. *Hollister,* (2 *Seld.* 309.)   To exercise a supervisory power over the proceedings of all inferior magistrates and tribunals, to restrain them from the exercise of authority not conferred by law, and to reverse their proceedings when their jurisdiction has been transcended, is one of the most important duties of this court.   The power to review the proceedings of municipal corporations in this court is undoubted, (20 *John.* 430.   2 *Wend.* 395, 230, 277,)   How far and in what cases the court will exercise this power are questions addressed to its sound judicial discretion.   The writ is not one of right, like the writ of error at common law, but should always be, and generally is, allowed for good cause, and granted with great care and circumspection.   While I maintain the power to issue the writ to review all jurisdictional facts where private rights are to be affected and burdens imposed by the corporate act complained of, I agree with Judge Cowen, in 2 *Hill,* 28, *In the matter of Mount Morris Square,* that "in general we ought not to allow the writ when assessments of taxes or awards of damages are in question which affect any considerable number of persons.   If there be a want of jurisdiction even in the judicial act sought to be reviewed, or, in other words, if there be excess of legal power by which any person's rights may be injuriously affected, an action lies ; and it is much better that he should be put to this remedy than that the whole proceedings should be arrested, and perhaps finally reversed, for such a

cause." In the case of *The People* v. *Supervisors of Allegany,* (15 *Wend.* 198,) the certiorari was quashed, upon a very able opinion of Judge Bronson showing that the writ ought not to be issued to review the acts and proceedings of a board of supervisors, in levying taxes. That it was not a writ *ex debito justitia ;* that it ought not to issue without good cause shown, and that great public detriment, or inconvenience might result from interfering with the proceedings of special bodies like supervisors, commissioners of highways and the like—considerations which should always be taken into account by the court in allowing these writs. In *The People* v. *The Mayor of New York,* (2 *Hill,* 11,) the same learned judge says, "If it were not for a few modern cases I should be of opinion that we have no authority to supervise in this way, the acts, ordinances and proceedings of the corporation of the city of New York, or indeed of any other corporation public or private." In the same case the same judge says, "The allowance of the writ rests in the sound discretion of the court, and it has been often denied when the power to issue it was unquestionable, and where there was apparent error in the proceedings to be reviewed ; and if it has been improperly awarded it is not too late to correct the error, after a return and hearing on the merits." (15 *Wend.* 198. 1 *Hill,* 195, 200.)

In accordance with these views I should be inclined to quash or supersede the writ in this case, without examining the merits. Certain I am that the writ should not issue to a municipal corporation, as in this case, without notice and without a full opportunity for the respondents to show cause against it and bring to the consideration of the court such facts as may exist in each case calculated and proper to influence its discretion in allowing the writ. But the return is here, and I will therefore proceed to examine the merits, as it may be best for the interests of the city, and may tend to stop litigation about the assessment in question, to have the questions raised and discussed here, passed upon by the court. The certiorari requires the respondents to certify and return all papers, petitions, documents and proceedings under their control, concern-

ing the construction of a suspension bridge across the Genesee river, or relating to any assessment for the construction of such bridge, upon which any action had been had by the respondents. The return shows the presentation of petitions to the common council and their proceedings thereupon in ordering the construction of such bridge and directing the assessment to be made, to defray the expense of constructing the same, which, so far as they are material, will be noticed hereafter. The power of the common council of Rochester to order the improvement in question was not denied on the argument, and is undoubted. The question mainly discussed was whether they had taken the requisite preliminary steps to acquire jurisdiction to pass the proper ordinances for that purpose. Section 188 of the charter of the city of Rochester provides " That the common council shall not proceed to open, widen or improve streets, lanes and alleys, or make sewers or other expensive works, until first requested by a majority of the owners of the property to be assessed for such improvement, nor until at least ten days' previous notice shall be given by the common council, by pub- lishing the same in two or more newspapers published in said city, stating that such application is pending before the com- mon council, and specifying the time at which final action will be taken. Sections 189 and 190 provide that " before the com- mon council shall determine to make any such improvement they shall make an order directing some officer, to be designated, to ascertain and report to the common council an estimate of the expense thereof, and they shall then, by an entry in their minutes, describe the portion of the city which they deem proper to be assessed for the expense of such improvement. They shall cause notice to be published in one or more of the daily papers for one week, specifying such improvement, the estimated ex- pense thereof, and the portion or part of the city to be assess- ed for such expense, and shall require all persons interested in the subject matter of such improvement to attend the common council at the time appointed in such notice. At the time ap- pointed in such notice the common council shall proceed to hear the allegations of the owners and occupants of houses

and lots situated within the portion or parts of the city so described as aforesaid, and after hearing the same shall make such further order in respect to such improvement as they shall deem proper." Under these three sections of the charter, before the common council can make the final ordinance or determination to make any such public improvement as is therein referred to, the following things are to be done and in the order following: 1st. A petition must be presented to it from a majority of the owners to be assessed for such improvement. 2d. Notice of such application must be published ten days in two daily newspapers. 3d. Some officer must be directed to make an estimate of the expense. 4th. An entry must be made describing the part or portion of the city to be assessed. 5th. Notice of such improvement, the estimated expense thereof, and the portion of the city to be assessed therefor, and requiring all persons interested to attend at a time appointed to show cause &c., must be published. All these steps, as appears from the return, were in due form taken by the common council, except the first. The point of discussion on the argument, and the chief ground on which the writ was sued out and allowed, was that the provision requiring a petition, signed by at least a majority of the owners of property to be assessed, to be presented to the common council, was not complied with. The return shows that nine several petitions were presented to the common council before they proceeded to act in respect to the improvement in question, with about eight hundred names thereto attached, asking for the improvement. The form of one of the petitions is as follows:

"To the honorable the common council of the city of Rochester.

The subscribers, taxpayers in the district proposed to be assessed, respectfully request your honorable body to levy a tax sufficient to pay the cost of building a suspension bridge over the river, below the lower falls, beyond the amount now appropriated therefor, and not exceeding seven thousand dollars. They suggest that the territory be bounded north by the north line of the city; east by the east line thereof and

Clinton street; west by the Erie canal, and south by Brown and Gorham streets."

The petitions were all in the same form, except that the suggestion at the close in respect to the territory to be assessed, was in some of them slightly varied as to its extent. The suggestion at the close of the petition cannot be regarded, I think, as of the substance of the petition, or in the light of a condition. It is a mere suggestion without force, and in no respect binding on the common council. The substance of the petition must be deemed a request, under section 188, by the signers, to the common council, to make the improvement in question. We have, then, petitions signed by 800 persons describing themselves as taxpayers, asking the common council to levy a tax sufficient to pay the cost of building the bridge, &c. Before the common council acted at all on the subject, as they state in their return, these petitions had been presented and been duly referred to the committee on streets, bridges and public improvements, the chairman of which reported, before any further proceeding was had, except to direct the city superintendent to estimate the expense of the improvement, that the said committee had carefully examined into the matter and ascertained that said petitions were signed by a majority of the owners of the property to be assessed for the construction of such bridge; which report was accepted. This report was of course hypothetical; for the extent of the territory to be assessed had not then been legally determined or fixed by any appropriate resolution, but it was doubtless based upon the action contemplated to succeed the making of such report, and must be construed in connection with the resolution introduced at the same sitting of the common council, by the same alderman, and passed unanimously, fixing the limits of the territory to be assessed for the proposed improvement, and declaring that the common council had been requested by a petition signed by a majority of the owners of property to be assessed therefor, to proceed to the construction of the said bridge, and directing the publication of the requisite notice for all persons interested to show cause against it at the time therein fixed for that purpose.

There is an obvious inconsistency in the provisions of these three sections, 188, 189 and 191, in restraining the action of the common council until the improvement contemplated is asked for by a majority of the owners to be assessed therefor, and making the action of the board in the fourth division above given of the preliminary proceedings to confer jurisdiction, to follow such petition, the territory not having before been in any wise ascertained from which the petition is to come, or in which the petitioners must reside. Literally these provisions cannot be carried out together, for the first comes last and the last in some degree first. The three sections must be construed together, so as to have a practical effect.

The inconsistency doubtless arose in the original enactment of section 188, to meet the improvement of a single street or the construction of a sewer or the like, when it was apparent who was to be benefited; that is to say, all the inhabitants on the street or in the neighborhood of the sewer. The section was never designed for so extensive an improvement as this bridge. It must, however, be construed as the common council have practically construed it in this case. The common council must see, when it comes to order the improvement and fix the limits of the territory to be assessed, that a majority of the owners of property to be assessed therefor have in fact petitioned for the improvement in question. If they have a petition in the outset, as they had here, and such petition is in fact ascertained by them to be signed by a majority of the owners of the property to be assessed, when the part or portion of the city to be assessed for the said improvement is fixed, that is a substantial compliance with the sections of the charter, and all the compliance practicable in such a case. When the common council, on the 7th of August, passed the resolution fixing the limits of the territory to be assessed, and asserted in the resolution, as above stated, that a majority of the owners of the property to be assessed for the said improvement had petitioned therefor, they must be deemed to have duly ascertained and determined that fact. Their resolution declaring such fact must be considered in the nature of a judi-

cial finding *in pais* on that subject. It was rightfully re-garded by the common council as a jurisdictional question. They referred these petitions to the appropriate committee to ascertain the facts, and the committee did so, and made a report to the board on the subject, and this was immediately followed by the resolution aforesaid finding the fact or declaring it to be in conformity with such reports.

This finding ought to be, and I think is, conclusive on that question, in all places. The common council were called upon to decide on the facts upon which their jurisdiction depended, and we cannot say from any evidence returned to us that they decided erroneously. If the common council were a subordi-nate judicial body, and we had the right to reverse their de-cisions as we do the legal decisions of inferior courts upon appeal, we should hold their decision of such a question, upon such evidence as they had here, conclusive until reversed in due form. But the office of a common law writ of certiorari, as we have before seen—except when some statute gives the writ—is not to review erroneous *legal* decisions of inferior tribunals, but to set them aside for *an entire want of jurisdiction.* If no petition had been presented to the common council, as required in the 188th section of the charter, their proceedings would be clearly and palpably without jurisdiction, and we might reverse them; but not when they had, as in this instance, petitions, and had acted upon them carefully and in an appropriate man-ner, and finally decided that they were sufficient to entitle them to act in conformity with the prayer thereof.

The distinction I have made between the case where there is no evidence or facts upon which to base jurisdiction before the officers or tribunal called upon to act, and the case where there is *some evidence* tending to establish the requisite facts, and calling upon the tribunal, or officer, to pass upon its suffi-ciency or weight to establish the fact in question, is, I think, a sound one, and supported in effect by the decisions in the following cases : 5 *Cranch,* 173 ; *Betts* v. *Bagley,* (12 *Pick.* 572;) *Birdsall* v. *Phillips,* (17 *Wend.* 464;) 20 *id.* 779, 780, opinion of Judge Cowen, and *In matter of Faulkner,* (4 *Hill,*

The People *v.* The City of Rochester.

598.) In this last case Judge Bronson says: "Enough was proved to call upon the officer for the exercise of his judgment upon the weight and importance of the evidence, and if he erred in the decision of a question fairly presented, the error would not be fatal to the proceedings." This was the precise case here. Enough was presented in the nine petitions, with the report of the committee on streets, highways and bridges, thereupon, to call upon the common council to exercise their judgment upon the jurisdictional facts essential to entitle them to proceed to order the improvement in question; and having acted thereon, their decision is final and conclusive on that question. It was like the case above cited from 12 *Pick.* 572. That was the case of an insolvent's discharge under the two-thirds act of this state, set up in defense of a suit in Massachusetts. Chief Justice Shaw, page 583, says: "The question whether the petitioning creditors do in fact hold debts to the amount of two-thirds, is one of the facts to be judicially tried and determined by the judge or court;" and he says, "it would be preposterous to hold—if the judge erred in deciding that fact essential to his jurisdiction to grant the discharge—that all the proceedings would be *coram non judice*, and that all officers serving process have acted without authority."

"It is," as is well said by Judge Bronson in the case cited in 4 *Hill*, 602, "only where there is a *total want of evidence* upon some essential point that the officer will fail to acquire jurisdiction." This cannot be pretended in this case.

But, upon the question whether the petitions presented to the common council did in fact contain the signatures thereto of the owners of property to be taxed for the said improvement, requisite in point of numbers and location under section 188, to confer jurisdiction, we think the relator and all others estopped from raising the question, by their omission to raise it before the common council, when called upon to make their objections by the notice required to be published, and in this case actually published, under and in pursuance of section 190. The notice in question apprised all persons interested of the extent of

the territory to be assessed, and the amount of estimated expense of the contemplated improvement, and called upon them to attend the common council at a particular time therein specified, when allegations would be heard and action had thereon.

The intent of these sections, 188, 189 and 190, was to restrict the common council from making improvements which would involve local assessments, without the assent of a majority of the persons to be assessed. This was a question *in pais* in respect to each and every improvement, which the common council must decide *in limine.* All persons interested were called upon by the notice last aforesaid to look to this question too, and we think the legislature intended that the action of the common council, upon and after the publication of the last mentioned notice, should be final and conclusive upon that question. At least we are well satisfied that it is not our duty, upon the return to a common law certiorari, to listen to any objections of the kind presented here, and that we ought to hold the action of the common council final and conclusive upon all persons, in such cases, unless it clearly appeared that there was an entire and palpable absence of *all evidence* tending to confer jurisdiction before them. That was very far from the fact in this case.

The writ of certiorari should be dismissed and the proceedings affirmed.

WELLES, J., concurred.

T. R. STRONG, J., dissented.

Proceedings affirmed.

[CAYUGA GENERAL TERM, June 2, 1856. *T. R. Strong, Welles* and *Smith,* Justices.]