THE PEOPLE ex rel. FRANCIS HIGGINS, as Receiver, etc., Respondents, *v.* DAVID McADAM, Justice, etc., Appellant.

Within the meaning of the provision of the statute in reference to summary proceedings to recover lands (2 R. S. 512, § 28, subd. 4, amended by chap. 101, Laws of 1879), which authorizes the removal, as a tenant, of any person holding over and continuing in possession of real estate sold under execution against such person, after title under said sale has been perfected, any person in possession under the title which the purchaser has acquired is a tenant and may be removed. The statute is equally applicable to the judgment-debtor, and all who hold under him under pretense of title acquired from him, posterior to the judgment.

Accordingly *held*, that a person in possession under a lease executed by a receiver appointed in an action brought by executors, who held as such a leasehold interest in the premises, was a tenant within the meaning of the said provision; and that one who had purchased the interest of the executors upon sale under execution issued by order of the surrogate, upon a judgment against them as executors, recovered prior to the

appointment of the receiver, the Supreme Court having given leave that the execution be levied and enforced upon property in the hands of the receiver or the executors, could maintain summary proceedings to remove such tenant; that under the order of the Supreme Court the receiver was in effect the person against whom the execution was issued.

*The People ex rel. Higgins* v. *McAdam* (22 Hun, 559), reversed.

(Submitted February 1, 1881; decided March 1, 1881.) ·

APPEAL from judgment of the General Term of the Supreme court, in the first judicial department, entered upon an order made January 10, 1881, which affirmed a judgment awarding to the relator an absolute writ of prohibition, restraining the defendant from hearing and determining certain summary proceedings which had been instituted before him as one of the justices of the Marine Court of the city of New York, and which affirmed an order sustaining a demurrer of the relator to the return of defendant to an alternative writ of prohibition. (Reported below, 22 Hun, 559.)

The following facts appeared:

John H. McCunn died in 1872, possessed, among other property, of a leasehold interest in certain premises in the city of New York. His will was duly proved December 4, 1872, and James M. Gano, Thomas McCunn and Jane W. McCunn were appointed and qualified as executors and executrix thereof. On December 14, 1875, Francis J. Parker recovered a judgment in the Supreme Court against said executors and executrix for the sum of $12,209.03, which judgment was docketed on the same day in the city and county of New York. On March 28, 1876, a receiver of the property of said John H. McCunn was appointed by said court, by an order made in two pending suits, one of them an action brought by Gano, executor, to have the will construed, and the other a suit in partition of said leasehold estate. The receiver so appointed took possession of the property of the deceased. He subsequently resigned, and the relator, Higgins, was appointed and qualified as his successor. On May 4, 1876, after the receiver had taken possession, the surrogate of the county of New York made an order granting leave to Parker to issue

execution on his judgment. On September 2, 1876, execution was issued. On September 11th, the Supreme Court made an order giving leave to the sheriff to levy and enforce the execution on assets in the receiver's possession, or in that of the said executors belonging to the estate. On March 19, 1877, the sheriff sold the leasehold interest in question, under the execution, to James A. Flack. A certificate of sale in the usual form was executed and filed, and on June 20, 1878, a deed of conveyance of said interest was executed and delivered by the sheriff to Flack. On September 19, 1879, the relator, Higgins, as receiver, leased the premises in question to Virginia Herring, who entered into possession. On January 12, 1880, Flack demanded possession of the premises from Mrs. Herring. On January 24, 1880, he obtained an order of this court allowing him to commence and prosecute such actions or proceedings in any court having jurisdiction thereof, as he might be advised, to obtain possession of said premises. On January 29, 1880, he filed with the defendant an affidavit setting forth in substance the facts above stated and obtained from said justice a summons under the statute relating to summary proceedings, returnable on February 2, 1880. On that day Mrs. Herring and the relator appeared by counsel, and a motion was made to dismiss the proceedings, on the ground that the justice had no jurisdiction, which was denied. The proceedings were then adjourned, by consent, to the 14th of February, 1880. On the 12th day of February, 1880, the relator procured and served an alternative writ of prohibition restraining the prosecution of the proceedings; Mr. Justice McAdam made a return, which consisted in substance of a statement of the foregoing facts. To this return the relator demurred. The court, after argument, sustained the demurrer. Judgment was thereupon entered accordingly, and the writ was made absolute.

*Edward Jacobs* for appellant. The justices of the Marine Court have jurisdiction under the act in relation to summary proceedings. (3 R. S. [6th ed.] 824, § 28.) The tenancy in

this case was "a personal holding over and continuing in possession of real estate which had been sold by virtue of an execution against such person," within the meaning of the statute. (*Birdsall* v. *Phillips*, 17 Wend. 474; 2 R. S. 513, § 28, subd. 4; *Lynde* v. *Noble*, 20 Johns. 82; reviser's note, 3 R. S. 765 [6th ed.]; *Hallenbeck* v. *Gerner*, 20 Wend. 22; *Spraker* v. *Cook*, 16 N. Y. 567, 571; revisers' note to § 2232 of Throop's New Code; *People* v. *Palmer*, 16 Hun, 567.) The right to maintain summary proceedings under the statute is not confined to the purchaser at the sale. (*Brown* v. *Betts*, 13 Wend. 30.) The term "legal representatives," as used in the statute, includes the person to whom the landlord's title, or the tenant's possession, has been transferred, either by voluntary transfer or by act or operation of law. (*Matter of Renwick et al.* [January, 1879,] 1 N. Y. Monthly Law Bulletin, 19.) The reasoning of the General Term, that because the tenant was put in possession by the receiver, and there was no execution sale against such person, that these proceedings will not lie, is fallacious. (*Chautauque County Bk.* v. *Risley*, 19 N. Y. 369.) Even leave to commence proceedings against the tenant was unnecessary. (*Finnin* v. *Malloy*, 33 N. Y. Super. Ct. 382.) All the provisions of the statute in relation to the sale of real estate by execution and the redemption thereof were made applicable to leasehold property by the statute of 1837. (3 R. S. [6th ed.], p. 638, § 105.) A judgment against the executors or administrators of a deceased person is not a lien upon his real estate, and is not even evidence of the debt as against the heir or devisee. (45 N. Y. 806; 2 Lans. 172.) Where the interest is "leasehold" and vests in the executors or administrators as personalty, a different rule prevails. (*Despard* v. *Churchill*, 53 N. Y. 199; 3 R. S. [6th ed.] 617, § 4; id. 96, § 42; 125, §§ 19, 20, 21, 22, 23; *Bigelow* v. *Finch*, 17 Barb. 394; *Cook* v. *Kraft*, 3 Lans. 512.) The general scope and purpose of the proceeding was within the jurisdiction of the justice. (*People ex rel. Ran* v. *Seward*, 7 Wend. 518; *People ex rel. Greeley* v. *Oyer & Terminer*, 27 How. 19; *People, etc.* v. *Ct. of Com. Pleas*, 28 id. 477; *People ex*

*rel. Bean* v. *Russell,* 3 Abb. [N. S.] 232; *People ex rel. Brownson* v. *Marine Ct.,* 14 Abb. 266.) The relator, if aggrieved, had an adequate remedy by *certiorari* to review the proceedings of the justice. (*People ex rel. Thatcher* v. *Clute,* 42 How. 157; *People, etc.* v. *Superv'rs of Ulster County,* 31 id. 239; *Ex parte Brandlacht,* 2 Hill, 367.) A writ of prohibition cannot take the place of a writ of error or other proceeding for the review of judicial action. (*The People* v. *Russell,* 19 Abb. 136; *Thompson* v. *Tracy,* 60 N. Y. 38.) This prohibition was not, when obtained, a writ of right. (High's Extraordinary Remedies, §§ 765, 767.) This writ was never allowed to usurp the functions of a writ of error or *certiorari,* and could never be employed for the correction of errors of inferior tribunals. (§ 772.) (*People* v. *Wayne,* 11 Mich. 393; High's Extraordinary Remedies, § 770; *Bulener* v. *Hase,* 3 East, 217.) Applications for injunctions to enjoin "summary proceedings" have invariably been denied where the statute gave the tenant an adequate remedy, *i. e.,* where his defense was of a legal character, which might (if true) be effectually established before the magistrate. (High on Injunctions, § 46; Kerr's Injunctions in Equity, 15; *Smith* v. *Moffat,* 1 Barb. 65; *Wordsworth* v. *Lyon,* 5 How. Pr. 463; *Hyatt* v. *Burr,* 8 id. 168; *Duigan* v. *Hogan,* 1 Bosw. 645; *S. C.,* 16 How. Pr. 164; *McIntire* v. *Hermander,* 7 Abb. Pr. [N. S.] 214; *Seeback* v. *McDonald,* 11 Abb. Pr. 97; *Ward* v. *Kelsey,* 14 id. 106; *McGune* v. *Palmer,* 5 Robt. 607; *Rapp* v. *Williams,* 4 T. & C. 174.)

*Adrian H. Joline* for respondent. The justice had no jurisdiction to hear or determine the summary proceedings in question. (2 R. S. 513 [2d ed.], 529; Laws of 1879, chap. 101.) This statute, being in derogation of the common law, must be construed strictly. It gives a new remedy and creates a new jurisdiction unknown to the common law. (*Miner* v. *Burling,* 32 Barb. 540; *Farrington* v. *Morgan,* 20 Wend. 207; *Campbell* v. *Mallory,* 22 How. Pr. 188; *Deuel* v. *Rust,* 24 Barb. 438; *Hill* v. *Stocking,* 6 Hill, 314; *People* v. *Boardman,* 4 Keyes, 59; 2 Crary's

Spec. Proc. 281; Potter's Dwarris on Stats. 240, 259; *Van Horne* v. *Dorrance*, 2 Dall. 316; *Brown* v. *Barry*, 3 id. 367.) Neither the relator nor his tenant was the servant or agent of the judgment debtors, or ever took any conveyance or assignment from the judgment debtors. Nor was the relator's title acquired "subsequent to the lien of the judgment." (*Hallenbeck* v. *Garner*, 20 Wend. 22.) If the leasehold interest was realty, it could not be sold under a judgment against executors. (3 R. S., part 3, chap. 8, tit. 3, art. 1, § 12 [6th ed.], 733.) If it was not real estate, no judgment became a lien upon it until a levy was made. (2 R. S. 359, § 3; old Code, §§ 282, 462.) As the magistrate had no jurisdiction to entertain the proceedings, the remedy by writ of prohibition was relator's proper remedy. (*People ex rel. Wheeler* v. *Cooper*, 57 How. Pr. 416.)

FOLGER, Ch. J. Section 28, article 2, title 10, chapter 8, part 3 of the Revised Statutes (vol. 2, p. 512), provides that any tenant of premises may be removed therefrom, if they lie in the City of New York, by any justice of the Marine Court. The statutes, in subsequent sections, prescribe the manner in which the removal may be made. There is no question in this case but that the proceedings had before Justice McADAM were formally in accordance with the statute. The defendant in them, Virginia Herring, was the tenant of the premises, and they lay in New York city. So far, it seems that the justice of the Marine Court had jurisdiction. But the 28th section (*supra*), in four subdivisions, limits the general character of its first declaration, and therein designates the particular cases in which the power to remove may be exercised. The case in hand, if it meets either of those, meets the fourth. That is for the case of a person holding over and continuing in possession of real estate which shall have been sold by virtue of an execution against such person, after a title under such sale shall have been perfected. In the case before us there has been a sale of the premises of which Herring is in possession; the sale was by virtue of an execution; and the title under the sale has been perfected. The execution, how-

ever, was not against her. She is not, literally, the person against whom the execution was issued. If the provisions of the fourth subdivision are to be strictly applied, she is not amenable to them. There have been, however, judicial interpretations of it which have declared that it may be applied liberally. Thus it has been held that the proceedings may be had against the tenant of the person against whom the execution issued (*Birdsall* v. *Phillips*, 17 Wend. 464.); that the conventional relation of landlord and tenant need not exist between the purchaser at the sheriff's sale and the occupant of the premises, arising from a lease or compact between them; that the purchaser takes all the rights of the landlord; that there does thereupon arise between the purchaser and the tenant the relation of landlord and tenant; that the statute does not mean a holding over by his own personal act, but that if he do it by agent, servant or tenant at will, he may equally be said to hold over; that the statute is equally applicable to the judgment debtor and all who hold under him under pretense of title acquired posterior to the judgment. In *Hallenbeck* v. *Garner* (20 Wend. 22) the authority of 17 Wend. (*supra*) is recognized, and that a servant or agent, or one entering upon the premises under title derived subsequent to the lien of the judgment under which the sale has been made, is amenable to the statute. And in *Spraker* v. *Cook* (16 N. Y. 567) it is declared that by this statute the legislature has applied the designation of tenant to the judgment debtor in possession, and that of landlord to the purchaser of the land on execution, without discriminating between such parties and those who are properly landlords and tenants. It seems, then, that Herring, though not the person against whom the execution issued, is liable to proceedings under the statute, if she has entered upon the premises under pretense of title thereto, acquired subsequent to the lien of the judgment. And the dates furnished by the case show that she did. The debtor died in 1872, having a leasehold interest for years in the premises, not yet at an end. In December of that year executors of his will qualified and received letters testamentary, and went into possession of the

premises as owners of the leasehold estate. In 1875 one Parker, a creditor, recovered a judgment againt those executors and docketed it. In March, 1876, a receiver of the estate was appointed, in proceedings by the executors for a construction of the will, and in proceedings for a partition of the leasehold estate. In May of that year, by order of the surrogate therefor, Parker issued an execution against the executors, judgment debtors in his judgment, and thereupon, in September of that year, issued an execution, which the Supreme Court ordered to be levied upon any of the assets or property of the testator in the hands of the executors, the judgment debtors. In 1877, the sheriff, by virtue of the execution, and a levy under it on the leasehold estate, sold that estate and gave a certificate to the purchaser. In 1878, at the expiration of fifteen months from the sale, the sheriff gave a deed to the purchaser, who is the same one who has taken these proceedings to remove Herring. In 1879, the receiver leased the premises to Herring, and she went into possession by authority of the lease, and under the title of the receiver. Thus it appears, that the possession of Herring is by the title of the receiver, and that his title was acquired posterior to the judgment. She is within the provisions of the statute, as interpreted by the adjudications that we have cited. The execution was not against her nor against the receiver who let to her. But it was against the executors. The receiver had no greater or other title than that of the executors; and no right to let, save what he got by acquiring their title. It was either under their title that Herring held, which was a title subject to the lien of the judgment, and swept away by a sale under execution thereon and a perfecting of the sale thereon by taking the sheriff's deed; or it was under the title of the receiver, which was a title posterior to the lien of the judgment and equally swept away. The receiver did not take strictly under the executors, but he took only their right and title; he took not as their agent or servant, but he took as representing their testator in part, and those interested in the testator's estate in part. *Spraker* v. *Cook* (*supra*) shows that an exact meaning is not to be given to the terms "landlord" and

" tenant," in applying the fourth subdivision of the twenty-eighth section; that the purchaser is a landlord, and that any one in possession under the title that the purchaser has acquired is a tenant, within its scope.

We perceive that the interest in real estate affected by the proceedings is a leasehold for a term of years. Such an interest was at common law personal property, but the statutes of this State have for some purposes modified its character. Estates for years are by those statutes denominated estates in lands. They are still chattels real, and are not classed as real estate in the chapter of the Revised Statutes, of " Title to Property by Descent." A judgment binds and is a charge upon the chattels real of every person against whom the judgment is rendered. We will not say, that estates for years in the hands of executors are thus bound and charged, when they have acquired them as the property of their testator, though the judgment be against the executors. For leases for years of a decedent go to his executor or administrator, as assets for distribution, and vest in him as part of the decedent's personal property. (*Despard* v. *Churchill*, 53 N. Y. 199, and citations there made.) It may be that there is a conflict in the statutes on this subject, when it is sought to apply them all at once to such a state of facts as has arisen in this case. If there be, it is not needed that we seek to allay it now. The creditor recovered and docketed his judgment against the executors, before the appointment of a receiver. The receiver was appointed by the Supreme Court. He was not appointed on the application of creditors. His duty was to receive rents and profits and collect personal estate, and to make deposits with a trust company. He stood in the place and stead of the executors for the benefit of those in any wise interested in the estate of the testator. He was not in hostility to the judgment creditor. When the creditor had, by an order duly made by the surrogate, issued his execution to the sheriff, commanding him to collect it out of the assets and personal property of the testator in the hands of the executors at the time when the judgment was docketed, the Supreme Court then gave leave

that the execution be levied and enforced upon any assets or property in the hands or under the control or possession of the receiver, or of the executors, which were of or belonging to the testator.

This order, made by the same court which had appointed the receiver, justified the levy upon this leasehold estate; and when the levy was after that made, established it as a binding charge upon that estate, as fully as the judgment could have been had it been rendered against the testator. It did more than that; in effect, it made it an execution, not only against the defendants named in the judgment, but against the receiver also. He was by the operation of the order, though not in terms, yet in substance, the person against whom the execution was issued. The levy and sale under it, and the perfecting of the sale, took place before the lease by the receiver to Herring. Thus her possession was taken under a title that was subordinate to, or extinguished by, the judgment, execution and order, sale and deed. We see no reason why the facts do not bring the case within the principle of the adjudications that we have cited. If so, the justice of the Marine Court had jurisdiction of the subject-matter, of the persons and of the case, and should not have been prohibited from exercising it.

The judgment appealed from should be reversed.

All concur.

Judgment reversed.