1814.

HAIGHT
v.
DAY.

————◦※◦————

*May* 2d.

### HAIGHT AND OTHERS *against* DAY AND OTHERS.

Where an act of the legislature, for the incorporation of a bank, appointed certain *commissioners*, for the special and sole purpose of receiving subscriptions, and they were directed " to apportion the excess of shares among the several subscribers, as they should judge *discreet* and proper ;" *it seems,* that chancery will not interpose, to stay all proceedings, under the act, by an injunction, on a bill charging that the commissioners, in the exercise of their discretion, acted partially and improperly, where the charge of bad faith is fully repelled by the answer.

*It seems,* that where a statute gives to certain persons a discretion in a particular case, and for a special purpose, a mistake of judgment, in that case, cannot be reviewed and corrected by the court.

THE bill, on which an injunction had been granted, filed 21st of *May*, 1813, recited the act of the legislature, passed the 26th of *March*, 1813, (sess. 36. ch. 80.,) for the incorporation of the *Catskill Bank*. The plaintiffs were subscribers. All the subscriptions amounted to 36,432 shares. The number of shares to be subscribed, exclusive of those to be subscribed by the bank of *Hudson*, was limited to 6,000; and the commissioners were to apportion the

excess among the several subscribers, as they should judge discreet and proper. The bill charged that the commissioners proceeded to apportion the excess, and arbitrarily, and against the consent of *Isaac Dubois*, one of the commissioners, and a plaintiff, assigned the 6,000 shares prescribed by the act, among *themselves*, their *relations*, and *favourites*, &c.; and that the apportionment was made corruptly and fraudulently, &c.; and prayed a discovery, and an injunction from holding the first election under the act.

A supplemental bill was filed the 27th of *May*, 1813, stating, that the defendants had not appeared, nor had the *subpœnas* been served; that the first election of directors had been held under the corrupt distribution of the shares, as stated above, and making the directors parties, and praying an injunction, &c.

The defendants, in their answer, put in on the 16th of *June*, 1813, stated, that the subscription books were opened to all persons, &c.; that the commissioners apportioned the excess, as they judged discreet and proper, according to a schedule annexed to the answer; and they denied that they distributed the shares without the assent of *Dubois*, who subscribed his name to the distribution; but they refused to apportion as he wished, because *S. Haight* was hostile to the incorporation, and the other persons were his connexions and dependants, or poor, or hostile to the institution; and they did believe that there was a combination, by *S. Haight*, and others, to procure a majority of the shares, and suppress the bank, or manage it improperly; and they believed that the apportionment, made by them, was best calculated to promote the interest of the village of *Catskill*, and of the community at large; that after the directors were chosen, the subscription book, and deposite money, were delivered over to the directors, who ordered the cashier to refund the surplus deposites, which he continued to do, until the injunction was served; that two thirds of the whole deposites had been refunded; and certificates of stock were issued to the

1814.          holders for their shares; and they denied that they were in-
               fluenced by motives of favouritism, or that they acted from
HAIGHT
  v.           any agreement, or concert, as alleged in the bill, &c.
 DAY.               A motion was now made to dissolve the injunction.

         *E. Williams*, and *Van Vechten*, for the defendants.

         *Henry*, contra.

         THE CHANCELLOR. The bill charges the commissioners
    with an unjust, fraudulent, and corrupt apportionment of the
    shares subscribed to the *Catskill Bank*. The shares, ex-
    clusive of those to be subscribed by the bank of *Hudson*,
    were limited to the number of 6,000, and there were sub-
    scribed 36,432. The commissioners were to "apportion
    the excess among the several subscribers, as they should
    judge discreet and proper." The bill charges a gross ine-
    quality in the apportionment among the subscribers, and that
    the distribution was principally confined to the commission-
    ers themselves, their relations, and favourites.
         The defendants, in their answers, deny all improper motives,
    in the execution of their trust, and aver that they made such
    an apportionment as they deemed discreet and proper, and
    best calculated to promote the interest of the village of *Cats-
    kill*, and of the community at large; and that they believed
    there was a combination formed to suppress, or injure, the
    institution; and that this was the governing motive for that ex-
    treme inequality in the distribution, which is not denied,
    but admitted. The question arises, whether the injunction,
    under these circumstances, ought to be continued to the final
    hearing of the cause. The next annual election of direc-
    tors, under the charter, ought to take place on the last *Tues-
    day* of this month, and if that be not permitted, the institu-
    tion will be dissolved. So far, at least, the injunction ought
    to be withdrawn; and since all bad faith in the commission-
    ers is denied, and their motives may have been not only

pure but commendable, it becomes a serious inquiry, whether the operation of the institution ought to be suspended during the further progress of this suit. The legislature must have considered the establishment of the bank in *Catskill* of public utility, or they would not have passed the law ; and so long as the operation of the bank is prohibited, so long that public utility is defeated.

1814.

HAIGHT
v.
DAY.

The point raised, whether the exercise of the power of the commissioners, in making the apportionment, be subject to judicial correction, need not, necessarily, be decided upon the present motion. I have no doubt it may be controlled, if exercised in bad faith, and against conscience ; but whether a mere error in judgment ought to be reviewed, is a question deserving of much consideration.

Where a statute gives to commissioners a discretion, in a particular case, and for a special purpose, I doubt, exceedingly, whether a mistake of judgment, in that case, can be corrected. The supreme court seemed to think it could not, in the case of *Lawton* v. *The Commissioners of Highways*, (2 *Caines' Rep.* 182.) In the case of a special power granted to an individual by a will, to be exercised according to discretion, the court of chancery has repeatedly refused to interfere, and to judge of the motive, where there was great inequality in the distribution of property under the trust. (*Cevil* v. *Rich*, 1 *Ch. Cas.* 309. *Maddison* v. *Andrew*, 1 *Ves.* 58.) This is a stronger case than that of a private trust, created by the act of the party, or of a public trust, created for general purposes, and the courts would certainly interfere, in this case, with much greater reserve and caution. Here, the legislature selected the trustees, by name, for a special purpose, and for no other, and confided to them to act, in the given case, as they should *judge discreet and proper ;* and after the act was performed, they were to become *functi officio.*

These words, " as they should judge discreet and proper," gave an undefined discretion, and would be utterly

senseless, upon the construction that the apportionment was intended to be, to each subscriber, in a *ratio* to the amount of his subscription.   That would have been a plain mathematical rule, without the exercise of any discretion ; and if that had been the meaning of the law, it would, undoubtedly, have said so.   The word *apportion* must mean, here, to assign to each subscriber, or give him, such portion as the commissioners should deem meet.

Assuming, then, for the present, that the charge of corruption, or of a wanton and unworthy exercise of discretion, is repelled by the answer, I am of opinion that the injunction ought to be dissolved.

Motion granted.