MOOERS *against* SMEDLEY and others.

The review and correction of all errors, mistakes, and abuses, in the exercise of the powers of inferior and subordinate jurisdictions, and in the official acts of public officers, belongs exclusively to the Supreme Court.

As, where the supervisors of a town, under the acts of the legislature, and pursuant to the vote of the town, allowed bounties for the destruction of wolves, the amount of which was inserted in the annual tax list, to be levied and collected of the owners of lands, &c.; an injunction, to restrain the collection of the sums so allowed for bounties, was denied, especially as there was no allegation of fraud or corruption, but, at most, an error of judgment in the board of supervisors.

*Jan.* 30*th.*     BILL, filed *December* 8, 1821, stating, that the plaintiff is proprietor of lands in the town of *Mooers*, in the county of *Clinton*, and charged with taxes levied by the supervisors on the 5th of *October*, 1821. That the board of supervisors, at that meeting, allowed a *town bounty* against the town of *M.*, of twenty dollars a head for every full grown wolf killed in that town, subsequent to the last annual town meeting, to every citizen of this state, as well to non-residents as to residents of the town. That the authority for allowing these bounties was *a vote passed in the last annual town meeting of Mooers*, held on the third day of *April* last, in which they voted a bounty of twenty dollars for every wolf caught by any resident in the town. That a special town meeting, held in the town on the 28th of *June*, revoked the vote allowing the bounty. That the plaintiff appeared before the board of supervisors in *October* last, and protested against the resolution. That the board of supervisors allowed against the town of *M.* for killing one hundred and one full grown wolves, and two young whelps, at the rate of twenty dollars for each wolf, and ten dollars for each whelp, to the amount of

two thousand and forty dollars, which amount was made up in the tax lists against the town, to be collected by *John Smedley*, the collector, and paid to *Jabez Fitch*, jr., supervisor, to be paid by him to the persons in whose favour the bounties were allowed. That a very large proportion of these wolves were killed by non-residents of the town, and a great proportion of them were killed after the 28th day of *June* last. That in pursuance of the resolution of the supervisors, *forty dollars* were allowed in favour of *Andrew Moore* of *Plattsburgh*, six hundred dollars in favour of *Matthew M. Standish* of *Plattsburgh*, sixty dollars in favour of *Jonathan Griffen* and *Matthew M. Standish*, and sixty dollars in favour of *William Swetland* of *Plattsburgh*, and one hundred and eighty dollars in favour of *Hiram Horton* of *Malone*, in *Franklin* county, and one hundred and sixty dollars in favour of *Isaac Sebring* of *New-York*, and various other sums to other non-residents of the town. That the tax on real and personal property in the town of *M.*, is more than twice as much upon the dollar as the average tax upon the dollar in all the other towns in the county, and this was owing, principally, to the allowance of the wolf bounties. That the plaintiff is injured to the amount of more than one hundred dollars, in the augmentation of his tax on lands owned by him in that town. That the plaintiff intends to apply to the next Supreme Court for a *mandamus*, directing the supervisors to annul their resolution, or to have their resolution, and the assessment, removed by *certiorari* into the Supreme Court, and the plaintiff has already given *notice* to the supervisors of such intended application. *Prayer*, that all proceedings whatsoever in the premises be stayed, until the intended application to the Supreme Court, and its decision thereon; and for an injunction to restrain *Smedley*, the collector of the town of *M.*, from collecting the tax, and to restrain *Fitch*, the supervisor, from paying over the same, and to restrain *Moore, Standish, Griffen,* and *Swet-*

1822.

MOOERS
v.
SMEDLEY.

*land,* from receiving the money, until the Supreme Court shall have made a decision on the premises.

*January* 28*th.* *Foote* and *Swetland,* for the defendants, moved, that the injunction be dissolved, and read the following papers :

1. A rule of the Supreme Court, of the 18th of *January,* denying the motion of the plaintiff for a *mandamus,* and for a *certiorari* to remove the resolution and assessment of the supervisors.

2. A number of affidavits, tending to show, that the special town meeting in the town of *Mooers,* in *June* last, was fraudulent, and without fair notice.

In support of their motion, the counsel cited 2 *Bro.* 19. 182.   4 *Johns. Ch. Rep.* 352.   *Laws N. Y.* vol. 2. 131, 132. 137. 511. act sess. 38. ch. 129. sec. 2.   2 *Caines,* 182.

*W. Duer,* contra.   He read a number of affidavits, being duplicates of those read on the other side, so far as related to the motion and decision in the Supreme Court.   He, also, read an affidavit of the plaintiff, relative to the list of persons in whose favour certificates of wolf bounties were given, showing that several of them were non-residents of the town of *M ;* that the number of certificates given before the 28th of *June* for wolf bounties, for wolves killed by the residents of the town, was twelve, amounting to two hundred and forty dollars ; that the number of wolf bounties properly allowed, by the supervisors, against the town of *M.,* under the town meeting vote in *April,* were eighteen, amounting to less than four hundred dollars.

THE CHANCELLOR.   It appears, that the supervisors of *Clinton* county, at their session in *October* last, examined, settled, and allowed, the bounties which had been voted by the town of *Mooers,* at their annual town meeting in

*April*, for the destruction of wolves, in favour of all persons who produced the requisite legal certificates of having killed the wolves within that town, subsequent to that vote. The supervisors, after discussion, determined, that non-residents were equally entitled with residents of the town, to the bounty, notwithstanding the vote of the town confined the bounty to residents; and they determined further, that the vote, or resolution of the town, continued to be valid and binding, notwithstanding a subsequent vote or resolution, at a special town meeting in *June* last, repealed the former vote allowing of bounties. It is, perhaps, not for me to say, whether the supervisors did, or did not, make a correct and legal determination. I cannot find, by any statute, or precedent, or practice, that it belongs to the jurisdiction of Chancery, as a Court of Equity, to review or control the determination of the supervisors, in their examination and allowance of accounts as chargeable against their county, or any of its towns, and in causing the moneys so allowed to be raised and levied. There was no allegation of fraud or corruption in the case. The most that could be said, was, that they made an erroneous determination. The act which has been cited, (*Laws N. Y.* vol. 2. p. 137.) gave the supervisors authority " to examine, settle, and allow, all accounts chargeable against the county, and to ascertain each town's proportion, and to add such further sum as any town should have voted to be raised for the destruction of noxious animals, and to cause all such sums to be raised and levied." This power implied, and required the exercise of sound judgment; and the review and correction of all errors, mistakes, and abuses in the exercise of the powers of subordinate public jurisdictions, and in the official acts of public officers, belongs to the Supreme Court. In my opinion, it belongs exclusively to that Court. It has, always, been a matter of legal, and never a matter of equitable cognizance. This is not the case of a private trust, but the

1822.

MOOERS
v.
SMEDLEY.

official act of a political body; and in the whole history of the *English* Court of Chancery, there is no instance of the assertion of such a jurisdiction as is now contended for. The superintending control, in these cases, has always been exercised in the Court of K. B., and no where else, and that Court has proceeded by *certiorari, mandamus, prohibition, information*, &c. I have only to regret, that I cannot afford a remedy to the party aggrieved; but I am clearly of opinion, that I cannot uphold the injunction, and the motion must, consequently, be granted.

Motion granted.

[On the 12th of *April*, 1822, an act of the legislature was passed, relieving the town of *Mooers* from paying any wolf bounties allowed to non-residents of the town, or for wolves taken after the 28th of *June*, 1821; and directing all bounties allowed by the supervisors of *Clinton* county, in *October*, 1821, to non-residents, or for wolves taken in the town of *Mooers* after the 28th of *June*, to be assessed, and paid by the county. This statute was, in effect, a legislative reversal of the decision of the supervisors, and was, probably, passed upon the ground, that there was a case of abuse, for which no remedy could be granted under the existing laws.]