ENGLISH and Others *v.* SMOCK and Others.

JURISDICTION.—*Courts of Inferior and Limited Jurisdiction.—Discretion.*— When statutory powers are conferred upon a court of inferior and limited jurisdiction, as the board of county commissioners, and a mode of exercising those powers is prescribed, the mode prescribed must be strictly pursued, or the acts of such court will be *coram non judice* and void; but where such a court has been entrusted with discretionary powers, no other court can interfere with such discretion or control the exercise thereof, as to acts performed in good faith within the power conferred.

INTEREST.—" *Annual Interest."*—*Construction.*—When an instrument provides
for the payment of " annual interest," and is silent as to when the interest shall
be paid, it is payable at the end of each year.

SAME.—*In Advance.*—It is not usurious or illegal to take interest in advance at
the highest rate of interest allowed by law.

COUNTY BONDS.—*Powers of County Commissioners.*—*Injunction.*—The board
of county commissioners may issue bonds of the county to raise money to build,
complete, or repair county buildings, and for that purpose have power to decide
upon the necessity of such construction, completion, or repairs, and that the
revenues afforded by reasonable taxation are insufficient therefor, and to fix the
time within which the bonds shall be paid, and, in the absence of fraud, the
exercise of such power cannot be questioned in a suit to enjoin the issuing of
such bonds; but it is required by the statute that the interest on such bonds
shall be made payable annually; and if it be ordered by the board that the
interest be made payable at shorter periods, the issuing of the bonds may be
enjoined at the suit of a citizen and taxpayer of the county.

APPEAL from Marion Common Pleas.

BUSKIRK, J.—The sole purpose of this proceeding was to
enjoin the board of commissioners of Marion county from
issuing the bonds of the county for the sum of four hundred
thousand dollars, and putting them on the market, to raise
money to build a new court house, and to complete the
building of an asylum for the poor, already in progress of
erection.

The complaint alleges, that the board of commissioners
of Marion county, on the 8th day of July, 1870, made and
caused to be entered of record the following preamble and
order.

"Whereas the court house of the county of Marion hav-
ing become untenable through decay, has been removed;
and

"Whereas the county of Marion is now about to begin
the construction of a new court house upon the square occu-
pied and used for such purpose; and

"Whereas the county is now engaged in the construction
of an asylum for the poor upon land belonging to the county,
and the same is not yet completed; and

"Whereas funds are needed to construct said court house,
and to complete said asylum for the poor; and

English and Others *v.* Smock and Others.

"Whereas the revenues of the county afforded by reasonable taxation are insufficient to accomplish these objects; and

"Whereas it is believed that a loan of the funds can be effected upon satisfactory terms, by the sale and negotiation of the bonds of the county, of the character hereinafter provided for; it is therefore

"*Ordered*, by the board of commissioners of Marion county, Indiana, that bonds of the county be issued for a loan to raise the funds for the building purposes before mentioned, in the sum of four hundred thousand dollars, being an amount not exceeding one per centum of the assessed valuation of the real and personal property in the county—fifty thousand dollars of the same being for the completion of the asylum for the poor, and three hundred and fifty thousand dollars for the construction of a court house for county purposes.

"The said bonds shall be issued in denominations of not less than five hundred dollars each, and shall bear interest payable semi-annually, on the first days of August and February in each year, at the rate of ten per cent. per annum.

"The principal and interest of said bonds shall be payable without relief from valution or appraisement laws, at ———, in the city of Indianapolis.

"The principal shall be payable on the first day of August, 1885, but the same may be redeemed at the pleasure of Marion county, at any time after the first day of August, 1877."

The complaint further alleges, that the said board of commissioners are, in pursuance of the said order, about to issue the said bonds and place them on the market for sale; that the said board of commissioners will so issue and sell such bonds, unless they are enjoined from so doing; and that the plaintiffs are citizens and taxpayers of the said county, and as such have a personal and pecuniary interest in the making of the said loan. The prayer of the complaint was for a perpetual injunction and general relief.

The appellants demurred to the complaint, for the follow-

ing reasons: first, the court has no jurisdiction of the subject of the action; second, the plaintiffs have no legal capacity to sue; third, there is a defect of parties plaintiffs; fourth, want of sufficient facts. The demurrer was overruled, and exception was taken.

The judge, sitting in chambers, granted an injunction, from which order the appellants appealed to this court. The errors assigned are two: first, the court erred in overruling the demurrer; second, the court erred in granting an injunction.

The appellees alleged in their complaint, and have urged in argument in this court, four reasons why the action of the board of commissioners was illegal, and ought to be enjoined.

The first is, that the interest on the bonds proposed to be issued is made payable semi-annually, when, by the law, the interest must be made payable annually.

The second is, that the statute prescribes the maximum rate of interest to be paid on *county* bonds at ten per cent. per annum, and when the interest is paid every six months, it, in effect, exceeds the rate of interest fixed by law, and makes it usurious.

The third is, that by the order of the board of commissioners, the bonds are to be payable on the first day of August, 1885, but the same may be redeemed at the pleasure of Marion county, at any time after the first day of August, 1877, when the law requires that they shall be payable in ten years.

The fourth is, that the commissioners are only authorized to borrow money, for the purposes named in the order, when the revenues afforded by reasonable taxation are insufficient to raise the money required; and it is averred that the revenues that would be afforded by reasonable taxation would be amply sufficient to raise all the funds required.

The appellants' demurrer admits the truth of the matters alleged in the complaint, but denies that the appellees are, under the law, entitled to the relief prayed for. The parties

English and Others *v.* Smock and Others.

have submitted very elaborate and able arguments. The appellants insist that the court possessed no jurisdiction of the subject-matter, and had no power or authority to enjoin them in the premises. It is maintained with great earnestness, that "the members of the board are the ultimate and exclusive judges, while the matter is pending before them, of the necessity and propriety of the loan, its amount, the manner and time of making it, and to provide the means of payment; and that, in the absence of allegations of fraud and corruption, a *court of chancery possesses no power to review or enjoin their* proceedings." We cannot give our assent to this broad and unqualified proposition. The board of commissioners is a court of inferior and limited jurisdiction, and it is well settled, both on principle and by authority, that where statutory powers are conferred on such a tribunal, and a mode of executing those powers is prescribed, the course pointed out must be strictly pursued, or the acts of such court will be *coram non judice* and void. When such a court has been entrusted with the exercise of discretionary powers, and the acts done are within the power conferred, and have been performed in good faith, then no court possesses the power to interfere with or control such discretion.

Adams, in his work on equity, states the rule thus: "The same principles are equally applicable to all other persons who have been authorized by the legislature to do specified acts, which, without such authority, they would be incompetent to do. So long as they are acting within their prescribed limits, the court of chancery has no control; but if they exceed those limits, if they are assuming to do that which the legislature has not said they may do, then, in so far as the excess is concerned, they have no authority; and, if their acts be of a nature to warrant an injunction, it will be granted against them." Adams Equity, 212.

In the case of *Hartwell* v. *Armstrong*, 19 Barb. 166, which was a proceeding to enjoin commissioners appointed by the legislature to drain swamp lands, the court say: "Even if they err in judgment, a court would hardly be justified in

interfering by the summary process of injunction to restrain their proceedings. Unless the defendants are violating the plain and manifest *intent* and *object* of the statute under which they are acting, or are proceeding in bad faith, the court should not interpose its authority to suspend the work."

SPENCER, J., in *Lawton* v. *Comm'rs of Cambridge*, 2 Caines, 179, observes, "The necessity of a superintending power, to restrain and correct partialities and irregularities which may be committed by inferior officers, is so obvious and indispensable, that the court ought by no means to deny themselves a jurisdiction of such salutary influence."

In the case of *Burnet* v. *The Corporation of Cincinnati*, 3 Ohio, 73, the Supreme Court say, "The bill, in this case, represents, that under a proceeding altogether illegal and void, but nevertheless under legal color, the defendants are about to sell a part of the real estate of the complainant, and prays the interference of the court, in the exercise of its chancery powers, to restrain them by injunction. The demurrer, and the argument in support of it, admit the truth of the allegations, and deny that this court can aid the party. If this be a tenable position, it results that public officers, having authority to operate upon the property of their fellow citizens, must be permitted to proceed, however illegal, unjust or oppressive their conduct may be. It follows, too, that the property of the citizen may be exposed to sale under circumstances that render it impossible for the parties to know whether a title can pass or not, thus involving great hazard to all concerned, and perplexing the titles to real estate, for no beneficial purpose to any person whatever. If such be the rule of the law, we must so administer it. But nothing short of a series of repeated adjudications would be sufficient to demonstrate that the law is so settled." The court, after a careful examination of the adjudicated cases, sustained the injunction.

The attorneys for the appellants have pressed upon our consideration the case of *Haight* v. *Day*, 1 Johns. Ch. 18, where the Chancellor says, that "where the statute gives to

commissioners a discretion in a *particular case*, and for a *special purpose*, I doubt, exceedingly, whether a mistake of judgment in that case can be corrected," &c.   This case is not in conflict with the current of authorities, when the point on which the case is decided is properly understood.   The Chancellor, in a subsequent part of the opinion says, "Here, the legislature selected the trustees, by name, for a special purpose, and no other, and confided to them to act, in the given case, as they should *judge discreet and proper;* and after the act was performed, they were to become *functi officio*.   These words, as they should judge discreet and proper, gave an undefined discretion, and would be utterly senseless, upon the construction that the apportionment was intended to be, to each subscriber, in a *ratio* to the amount of the subscription. That would have been a plain mathematical rule, without the exercise of any discretion; and if that had been the meaning of the law, it would, undoubtedly, have said so."

The above case was decided on the principle that the duties of the commissioners were not defined or prescribed by the law, and that the legislature had conferred upon them an undefined and *uncontrollable discretion*.

The same learned and eminent chancellor in the subsequent case of *Belknap* v. *Belknap*, 2 Johns. Ch. 463, held, that "where commissioners appointed under the authority of the act of the legislature, to drain a swamp, *exceed their authority*, to the injury of the plaintiff, a perpetual injunction will be granted, although there has been no trial, the plaintiff's title to the land being undisputed."

The cases of *Mooers* v. *Smedley*, 6 Johns. Ch. 28, and of *Magee* v. *Cutler*, 43 Barb. 239, are referred to and relied upon with great confidence by the attorneys for the appellants as sustaining and supporting their position.   We have carefully examined these cases, and find that the injunctions were refused upon the sole ground, that by the statutes of New York, the court of chancery had no jurisdiction, for the reason that the Supreme Court had the sole and exclusive jurisdiction, and that the remedy was by *certiorari*, and not

by injunction.   The same doctrine has been repeatedly asserted since, in *Wiggin* v. *The Mayor of New York*, 9 Paige, 16; *Van Doren* v. *The Mayor, &c., id.* 388; *Heywood* v. *The City of Buffalo*, 4 Kernan, 534; and in *Susquehanna Bank* v. *The Supervisors of Broome Co.*, 25 N. Y. 312.

Hilliard on Injunction, p. 521, says: "In New York, the *writ* of injunction, as a provisional remedy, is abolished by *the code of procedure*, and an injunction by *order* substituted." In New York the old remedy was mainly by *certiorari* in the Supreme Court, and now the writ of injunction is abolished, and the proceeding is by *order*.   This peculiarity in the laws and practice in New York will explain the apparent conflict between the decisions in that and other states, as to the jurisdiction and power of courts of chancery.

But we are not without authorities in this State, on the question under discussion.   It has been repeatedly held, that "if illegal taxes are assessed and threatened to be collected, the appropriate remedy to restrain their collection is by injunction."   *Greencastle Township* v. *Black*, 5 Ind. 557; *The City of Lafayette* v. *Jenners*, 10 Ind. 70; *The Toledo & Wabash R. R. Co.* v. *The City of Lafayette*, 22 Ind. 262; *Coffman* v. *Keightley*, 24 Ind. 509; *The Board of Comm'rs of Miami Co.* v. *Bearss*, 25 Ind. 110; *The Board of Comm'rs of Harrison Co.* v. *McCarty*, 27 Ind. 475.

The case of *Green, Treasurer, &c.,* v. *Beeson*, 31 Ind. 7, was a proceeding to enjoin the collection of taxes assessed against the plaintiffs for the construction of a turnpike under the act of March 6th, 1865.   The act of 1865 provided that no road constructed under that act should be less than five miles in length.   The board of commissioners had consolidated two roads; one of the roads consolidated was one mile long, and was already completed, and the other was uncompleted and was four miles in length.   The taxes were assessed to build the uncompleted road.   FRAZER, J., speaking for the court, says: "But it is urged, that the board of commisioners having permitted the organization of the turnpike company, the matter is no longer open to inquiry.   This position is unten-

able.   The commissioners were in the exercise of a special
statutory power; they cannot exercise it in disregard of the
statute which confers it, and especially where that statute
expressly forbids them to do so; and any attempt of the
kind is merely a nullity, binding nobody.   A judicial proceed-
ing where parties have a right and opportunity to be heard
is very different; and in such a case a judgment which the
tribunal has jurisdiction to render will bind, though it be
erroneous.   But in the case before us, as stated in the com-
plaint, the commissioners had no jurisdiction to authorize
the corporation.   The proceeding before them was *ex parte;*
nobody was required to be notified.   It would be monstrous
if action had under such circumstances should be held to
conclude further inquiry."

BALDWIN, J., in the case of *Bonaparte* v. *The Camden and
Amboy R. R. Co.*, Bald. 205, says: " We know of no rule
which excludes from this process any person over whom the
court has jurisdiction, on account of the character or capac-
ity in which he acts, although it is conferred upon him by a
law of a state or of Congress.   If the law is unconstitutional,
it can give no authority, if the power it confers is abused or
exceeded, the person who acts by color of law merely, is a
trespasser.   *   *   *   It must then be taken as settled, that
the circumstance of a defendant acting under color of law, or
as the agent of a corporation for making a road, canal or oth-
er improvement, is not of itself a good objection to the grant-
ing an injunction.   The court cannot control them in mere
matters of discretion; they must keep *strictly within their pow-
ers*, must not deviate from the line or route prescribed, abuse,
misapply, or *exceed their authority;* when they do so, a court
of equity will leave a complaining party to resort to the spec-
ial tribunal designated by the law, to decide on all questions
arising in its execution; but if they act otherwise, the court
will proceed in the usual way, by injunction."

But it is insisted in argument by appellees that the injunc-
tion should have been granted because the appellees had no
adequate remedy at law.   This involves an inquiry into what

is an ample remedy at law.   There is a recent decision of
the Supreme Court of the United States which is decisive
of this question.    In the case of *Watson* v. *Sutherland*, 5
Wall. 74, which was a proceeding to enjoin a marshal
from selling a stock of goods that had been levied on as the
property of Wroth & Fullerton and which goods were
claimed by Sutherland, the Supreme Court say, "It is con-
tended that the injunction should have been refused, because
there was a complete remedy at law.   If the remedy at law
is sufficient, equity cannot give relief, 'but it is not enough
that there is a remedy at law; it must be plain and adequate,
or in other words, as practical and efficient to the ends of jus-
tice, and its prompt administration, as the remedy in equity.'
3 Pet. 210.   How could Sutherland be compensated at law,
for the injuries he would suffer, should the grievances of
which he complains be consummated?    *    *    *    It is
well settled that the measure of damages (in an action against
the marshal), if the property were not sold, could not extend
beyond the injury done *it*, or, *if sold, to* the value of it,
when taken, with interest from the time of taking down to
the trial.   And this is an equal rule, whether the suit is
against the marshal, or the attaching creditors, if the pro-
ceedings are fairly conducted; and there has been no abuse
of authority.   Any harsher rule would interfere to prevent
the assertion of rights honestly entertained, and which should
be judiciously investigated and settled.   Legal compensa-
tion refers solely to the injury done to the property taken,
and not to any collateral or consequential damages, result-
ing to the owner, by the trespass.   Loss of trade, destruc-
tion of credit, and failure of business prospects, are collateral
and consequential damages, which it is claimed would result
from the trespass, but for which compensation cannot be
awarded in a trial at law.   Commercial ruin to Sutherland
might, therefore, be the effect of closing his store, and sell-
ing his goods, and yet the common law fail to reach the
mischief.   To prevent a consequence like this, a court of
equity steps in, arrests the proceedings *in limine*, brings the

English and Others *v.* Smock and Others.

parties before it, hears their allegations and proofs, and de-
crees, either that the proceedings shall be unrestrained, or
else perpetually enjoined. The absence of a plain and ade-
quate remedy at law affords the only test of equity jurisdic-
tion, and the application of this principle to a particular case
must depend altogether upon the character of the case, as
disclosed in the pleadings."

It is quite clear, that the appellees, according to the prin-
ciples enunciated in the above case, had no adequate and
complete remedy at law. But it is also contended, that the
court should not have enjoined the issue and sale of the
bonds for the reason that the appellees might have appealed
from the orders of the board made in reference to the loan
and assessment for the payment thereof.

Let us examine this question briefly. This court in the
case of *Green, Treasurer,* v. *Beeson, supra,* say, "If the cor-
poration cannot lawfully expend money under its peculiar
organization, what equity can there be in allowing it to collect
money?" We will transpose this sentence, so as to make it
applicable to the case under consideration. If the board of
commissioners cannot lawfully issue and sell the bonds under
the order made, what equity can there be in allowing them
to do so, and then levy the taxes to pay the interest and
principal of bonds that were illegally issued? There would
be just as much reason and plausibility in the position that
the appellees should permit the bonds to be issued and sold,
the taxes to be levied, and their lands to be sold for the non-
payment of such taxes, because they might defend an action
brought by the purchaser to recover the possession of the
lands.

MARSHALL, C. J., in *Osborn* v. *U. S. Bank,* 9 Wheat. 738,
says, "But it is the province of a court of equity, in such
cases, to arrest the injury and prevent the wrong. The rem-
edy is more beneficial and complete than the law can give."

The Supreme Court of Ohio, in *Burnet* v. *The Corporation
of Cincinnati, supra,* say, "When an assessment of a tax is
made, and its legality disputed, the uncertainty attendant

upon the final result puts the estate upon which it operates in iminent jeopardy. He can defend his possession; but if title do pass, he is remediless altogether. A mode, therefore, of deciding the question before any right is affected, is safest for all parties. It was upon this ground that the court entertained jurisdiction in the case of the *Bank United States* v. *Shultz*, from which, in principle, this case is not distinguishable."

The case of *Tash* v. *Adams, Treasurer*, 10 Cush. 252, was a proceeding to enjoin the collection of certain taxes that had been voted by Natick, and the injunction was refused upon the ground that the petitioners had been guilty of "laches and unreasonable delay in the enforcement of their rights." The court say: "Upon these facts, we think it very clear that the petitioners are not in equity entitled to the relief which they seek. So far as relates to this vote and appropriation by the town, assuming that the purpose for which the money was appropriated was illegal, because it was one for which towns are not authorized to incur expenditures or raise money (upon which question we express no opinion), nevertheless, the petitioners fail to make out a case entitling them to the interposition of this court. It is a well settled rule in equity, that if a party is guilty of laches, or unreasonable delay in the enforcement of his rights, he thereby forfeits his claim to equitable relief. This rule is more especially applicable to cases, where a party, being cognizant of his rights, does not take those steps to assert them which are open to him, but lies by, and suffers other parties to incur expenses and enter into engagements and contracts of a burdensome character. 2 Story Eq. § 959, *a;* Drewry Injunc. 294. The facts bearing on this part of the case as presented by the petitioners bring it very clearly within the operation of this salutary rule. The petitioners not only failed to use due and reasonable diligence in asserting their rights and seeking a remedy, but were guilty of gross laches. With a full knowledge of the vote of the town, and the proceedings of the committee, they permitted

English and Others *v.* Smock and Others.

contracts to be made and expenditures to be incurred, not only by the committee, but by third parties, who acted in good faith, relying on the credit of the town. They took no measures to enforce their rights until after the celebration had taken place, and innocent parties had come under liabilities which they would not have assumed if the petitioners had seasonably sought redress for the impending grievance. To issue our injunction restraining the payment by the town of the bills thus incurred, would be manifestly most inequitable."

These authorities demonstrate that the objection urged is invalid. It is quite clear that the court committed no error in overruling the demurrer to the complaint.

The next error assigned is, for granting the injunction.

The decision of this question renders it necessary that we should examine the objections that are urged to the order of the board of commissioners. The first is, that the interest on the bonds is payable semi-annually, when the law requires that it shall be paid annually.

The proceedings of the board of commissioners were had under sections 17, 18, 19, 20, 21, and 22, of an act entitled "an act providing for the organization of county boards, and prescribing some of their powers and duties" (approved June 17th, 1852).

Section 17 of the above act, as it was originally passed, provided that not more than ten thousand dollars should be borrowed, and fixed the rate of interest not exceeding the legal rate in the state or territory where the bonds were sold. This section was amended in 1869, by fixing the amount to be borrowed at not exceeding one per cent. of the assessed valuation of the real and personal property of the county, and declaring that the interest should not exceed ten per centum per annum.

Section 17, as amended, confers upon the board of commissioners the power, whenever it shall be necessary to construct, complete, or repair the court house, jail, or other county buildings, or whenever it shall be desirable to fund

or average any existing debt incurred for county purposes, and the revenues afforded by reasonable taxation are insufficient to do the same, to borrow for that purpose, any sum of money, not exceeding one per centum on the assessed valuation of the real and personal property of the county, and to issue bonds therefor, in amounts not less than twenty-five dollars each, and bearing a rate of interest not exceeding ten per centum per annum.

Section 18 reads as follows: "Such bonds may be sold at any place within the United States, but at no greater rate of discount than eight per cent., and shall be in form substantially as follows: State of Indiana, county of ———: The county of ——— will pay to the bearer ——— years from the date hereof, the sum of ——— dollars and ——— cents with interest thereon at the rate of —— per cent., payable annually at ———, in the State of ———, on the —— day of ———, in each year.

——————————, Commissioners of County."

Then follows the certificate of the county auditor, but no question arises thereon, and it is omitted. Section 19 provides the manner in which the auditor shall deliver the bonds to the treasurer, and fixes the liability of the treasurer on his official bond for such county bonds.

Section 20 makes the bonds assignable by indorsement thereon, and vests the title thereto absolutely in each and every indorsee successively. Section 21 provides that, whenever such bonds are sold or negotiated, the commissioners shall make a levy of not less than one-tenth of one per cent. on the taxable property of such county, and cause the same to be placed upon the tax duplicate, properly designated in a separate column, for the current and succeeding year; and such tax, when collected, shall be invested in the bonds aforesaid, or other state and county securities, and thereupon shall constitute a sinking fund for the extinction and ultimate liquidation of the debt created by the issue of such bonds.

Section 22 reads as follows: "The board of commissioners

English and Others *v.* Smock and Others.

shall provide by taxation for the annual payment of the interest accruing on all bonds sold, and for that purpose shall make a distinct and specific levy, and cause the same to be placed in a separate column, upon the tax duplicate, and such levy, when collected, shall be applied to the payment of the interest as aforesaid, and the balance, if any, to the payment of the principal of such debt, and for no other purpose whatever."

The order of the commissioners provides that the interest upon the bonds shall be payable semi-annually, and it is claimed by the appellees that, under the law, they possessed no power to make such an order. If the commissioners have exceeded the authority vested in them by the legislature, all acts done, or orders made, in excess of the prescribed limits, are illegal, and should be enjoined. We have given this question great consideration, and are quite clear that the board of commissioners possessed no power to provide for the payment of the interest semi-annually. The eighteenth section prescribes the form of the bond that shall be issued, and it provides, in express terms, that the interest shall be "payable annually." Section 22 declares, that "the board of commissioners shall provide by taxation for the annual payment of the interest accruing on all bonds sold." In the form of the bond it is declared that the interest shall be "payable annually," while in the twenty-second section the commissioners are required to provide for the "annual payment of interest."

Do the phrases "payable annually" and "annual payment" mean the same or a different thing? This question has been answered by the Supreme Court of Vermont, in the case of *Catlin* v. *Lyman*, 16 Ver. 44, where it is said, "The only question arising upon the merits of the present case is, whether a promissory note, payable in ten years from date, with *interest annually*, imposes the same legal obligation as when payable with *annual interest*. The attempt to make any distinction in the two cases savors too much of refinement.

It is no doubt true, that, in strict grammatical construction, the forms of expression are quite susceptible of different imports.   But courts of justice, in putting a construction upon contracts, should be governed more by the popular than by the strict philological import of words and phrases.  It is in this way only that we are enabled to get any well founded basis of making contracts speak the intention of the parties to them."

When the bond, note, or instrument provides for the payment of annual interest, and is silent as to when the same shall be paid, when is it payable ?   This question is answered by the Supreme Court of New Hampshire, in the case of *Pierce* v. *Rowe*, 1 N. H. 179.   The court say : " But we have already perceived that, by an express agreement of the parties, 'interest' on the sum named in the note in this action became due '*annually*,' or at the end of each year.   In this respect it resembled an instalment of principal thus becoming due ; and the decisions are numerous, that after the end of each year, an action could be sustained for the annual interest, as well as for the instalments."

According to these decisions—and many more could be produced to the same effect—the commissioners should have provided for the annual payment of interest, the legal effect of which would have been that the interest would be due and payable at the end of the year.

The order of the board is in conflict with the letter of the law, and we think it quite clear that it equally violates the spirit of the law.   It is susceptible of the plainest demonstration, that it was the true intent and meaning of the legislature that the interest should be payable annually, and at the end of the year.   Before the commissioners were authorized to make a loan, they were required to find and enter of record " that it was necessary to construct, complete or repair the court house, jail or other county buildings," and that " the revenues afforded by reasonable taxation are insufficient to do the same."   When these facts are found, the board could make a loan, and not before or otherwise.   The amount borrowed cannot exceed one per centum on the assessed valua-

English and Others *v.* Smock and Others.

tion of the real and personal property of the county. Section 21 requires the commissioners to make an annual levy of not less than one-tenth of one per cent. on the taxable property of the county, and cause the same to be properly designated and placed in a separate column; and this, when collected, is to be applied to the payment of the principal of the loan. Section 22 requires the commissioners to make a distinct and specific levy, and cause the same to be placed in a separate column on the tax duplicate, of a sum sufficient to provide for the annual payment of the interest; and the balance, if any, is to be applied to the payment of the principal of such debt, and for no other purpose whatever. The annual payment of the interest is provided for by annual taxation. The intention was that the interest should be payable at the end of the year, and that the money required to pay it should be collected by taxation; and this view is greatly strengthened by the fact that the commissioners are required, "whenever the bonds are sold or negotiated," to make a levy. The taxes are payable once a year.

If the interest is payable at the end of six months after the bonds are sold, no money will be raised, by taxation, to pay it. The ground upon which the commissioners are authorized to make a loan is, that the county cannot spare any money from the general fund. The money collected by taxation under sections 21 and 22 is to be applied, solely and exclusively, to the payment of the annual interest and the principal. The county will, then, at the end of six months, if the interest is payable semi-annually, be compelled to pay the interest out of the general fund, or borrow the money. In the former case, the county loses the use of the money for six months or until the annual tax is collected, while interest may be accumulating on her orders; and in the latter case the county is compelled to pay interest on money with which to pay interest on her bonded debt. The loan authorized by the order under consideration is four hundred thousand dollars. The interest is forty thousand dollars per annum. Suppose one person takes the entire loan. If the interest is pay-

able semi-annually, he will receive, at the end of six months, twenty thousand dollars. The interest upon that sum for six months, at the rate of ten per cent., is one thousand dollars, thus making the interest forty-one thousand dollars instead of forty thousand dollars. The bonds may be sold at a discount of eight per cent. The interest is ten per cent. It seems to us, that the great and rapidly increasing wealth of Marion county, the certainty of the annual payment of ten per cent. interest, and the ultimate redemption of the bonds, ought to be enough to induce capitalists to invest their money in these bonds without the payment of a bonus of one thousand dollars a year. It is very clear to us, that the payment of the interest semi-annually is in violation, not only of the letter, but also of the true intent and meaning of the law, and is unauthorized and illegal, not because it is usurious, but because the commissioners were not authorized by law to make such a contract. *The E. I. & C. Straight Line R. R. Co.* v. *The City of Evansville,* 15 Ind. 395 ; *Bank of Chilicothe* v. *Swayne,* 8 Ohio, 252 ; *Bank of the U. S.* v. *Owens,* 2 Pet. 527 ; *Strāus* v. *The Eagle Ins. Co.,* 5 Ohio St. 59.

The second objection is, that the payment of interest in advance, or semi-annually, would make it usurious. We do not think so. It is now well settled that interest may be demanded in advance, at the highest rate of interest allowed by law, and this will not make it usurious or illegal. *Fleckner* v. *Bank U. S.,* 8 Wheat. 354 ; *Haas* v. *Flint,* 8 Blackf. 67 ; *Cole* v. *Lockhart,* 2 Ind. 631 ; *Mowry* v. *Bishop,* 5 Paige, 98. Besides, the interest law of 1867 provides, that interest " may be taken yearly, or for a shorter period, in advance." 3 Ind. Stat. (Davis), 317. But this would not apply in a case like the one under consideration, where the law requires the interest to be paid at the end of the year. The conclusion that we have reached as to the payment of interest semi-annually, deprives the second objection of any force ; for as the interest has to be paid annually, the objection is removed. Our only purpose in considering it is to show that it would not make it usurious.

English and Others *v.* Smock and Others.

The third objection is, that the law requires the bonds to be payable in ten years, and that the order provides that they shall be payable at the end of fifteen years, subject to be redeemed at the pleasure of the county after seven years.  We have given this objection mature consideration.  There is great plausibility in the argument made.  The loan cannot exceed one per centum of the assessed valuation of the real and personal property of the county.  The interest on the loan is to be paid by a *distinct and specific levy* as provided in section 22.  Section 21 requires a levy of one-tenth of one per cent. of the taxable property.  If the taxes levied were all collected, the bonds could be paid in ten years.  But there is no plain and express requirement of the statute that the bonds shall be payable in ten years, and the implication arising from the language of the statute is not plain and strong enough to justify us in so holding.  Besides, the provision for the creation of a sinking fund tends strongly to show that it was the intention of the legislature to leave to the sound discretion of the commissioners, the time within which the bonds should be paid, and, in the absence of fraud or bad faith, we have no power to enjoin acts that are within the power conferred, and have been performed in the exercise of a sound discretion.

The fourth specification of causes why the court should enjoin the board of commissioners is, that reasonable taxation will supply sufficient funds to complete the asylum for the poor and construct the court house, without resorting to a loan; that the taxable property of the county amounts to forty millions, and that thirty cents upon the one hundred dollars will yield sufficient funds for the contemplated public buildings.

The learned attorneys for the appellants make the following answer to this objection:  "There is no allegation that the board of commissioners are acting fraudulently or corruptly; indeed, it is admitted, in argument, that they are acting honestly, but it is claimed that they are mistaken in their policy.  Now, this is a singular appeal to make to

the court. The law confides this matter exclusively to the board of commissioners, and they have the means of ascertaining all the facts necessary to form their judgment and shape their policy. They know the wants of the county and the amount of necessary expenditures; they are supposed to know whether reasonable taxation will afford sufficient funds to construct and complete these public buildings. They know the legacy of expense the war has entailed upon us for the support of widows and orphans and poor families, and how long these extra expenses are likely to continue."

In support of the above argument we refer to the following authorities. The Court of Appeals in the State of New York, in the case of *Porter* v. *Purdy*, 29 N. Y. 106, say, "When in special proceedings in courts, or before officers of limited jurisdiction, they are required to ascertain a particular fact, or to appoint persons to act in such proceedings, having particular qualifications, or occupying some particular relation to the parties or the subject matter, such acts, when done, are in the nature of adjudications, which, if erroneous, must be corrected by a direct proceeding for that purpose; and if not so corrected, the subsequent proceedings which rest upon them are not affected, however erroneous such adjudications may be."

This court, in the case of *The Evansville, &c., R. R. Co.* v. *The City of Evansville*, 15 Ind. 395, say, "It is a well settled principle, that when the jurisdiction of an inferior court depends upon a fact which such court is required to ascertain and settle, by its decision, such decision is conclusive." *Brittain* v. *Kinnaird*, 1 Brod. & B. 422; *Betts* v. *Bagley*, 12 Pick. 572; *Martin* v. *Mott*, 12 Wheat. 19; *Vanderheyden* v. *Young*, 11 Johns. 150; *Birdsall* v. *Phillips*, 17 Wend. 464; *Ex Parte Watkins*, 3 Pet. 193; *The People* v. *The City of Rochester*, 21 Barb. 656. The case of *Dequindre* v. *Williams*, 31 Ind. 444, and the decisions there referred to and discussed are much in point.

The power and authority of the board of commissioners to act in the premises depended upon whether the money was required for the purposes named in section seventeen, and

English and Others *v.* Smock and Others.

whether the money could be raised by reasonable taxation; and these facts having been found and settled, the decision is conclusive upon us in this proceeding.

We therefore hold that the order of the board of commissioners was in all things valid, except in providing for the payment of the interest semi-annually; and for that reason the judgment of the court below in granting the injunction must be affirmed. The foregoing opinion presents the views of a majority of this court, PETTIT, C. J., disents from our reasoning and conclusions, and will file a separate opinion stating the grounds of his dissent.

The judgment is affirmed, with costs.

PETTIT, C. J.—This was a complaint against the Board of Commissioners of Marion county to enjoin them from issuing four hundred thousand dollars in bonds of the county and putting them on the market, to raise money to build a new court house and to finish an asylum for the poor already commenced. The statute fully authorizes the board to make this loan. 3 Ind. Stat. 131. The grounds upon which the injunction is asked are technical and for supposed slight variations from the strict letter of the directions of the law in the proceedings of the board.

Where discretionary powers are given to a board, corporation, or person, for public purposes, an injunction will not be granted to forbid their exercise unless a gross departure from the law granting the power is shown, or fraud or corruption is charged. *Auburn, &c.,* v. *Douglass.* 12 Barb. 553; *Burnham* v, *Kempton,* 44 N. H. 78; *Roath* v. *Driscoll,* 20 Conn. 533; *Kekewich* v. *Marker,* 5 Eng. L. & Eq. 129; *The City of Lafayette* v. *Bush,* 19 Ind. 326.

In *Mooers* v. *Smedley,* 6 Johns. Ch. 28, the Chancelor said: "I cannot find by any statute, or precedent, or practice, that it belongs to the jurisdiction of chancery, as a court of equity, to review or control the determination of the supervisors in their examination and allowance of accounts as chargeable against their county, or any of its towns, and in

causing the money so allowed to be raised and levied.   There was no allegation of fraud or corruption in the case.   The most that could be said was that they made an erroneous determination."

If the legislature has entrusted the exercise of the power to the sole judgment and discretion of a particular person, or body of individuals, no court is authorized to interfere with or control that discretion, provided it is exercised in good faith.   See cases cited in 3 Abbott's N. Y. Dig. 362.

"An injunction cannot be granted to restrain the acts of officers of state, unless they are violating the plain and manifest intent of the statute under which they are acting, or are proceeding in bad faith."   *Hartwell* v. *Armstrong,* 19 Barb. 166.

In *Haight* v. *Day,* 1 Johns. Ch. 18, the Chancellor uses the following language: "When a statute gives to a commissioner a discretion in a particular case, and for a special purpose, I doubt exceedingly whether a mistake of judgment, in that case, can be corrected.   The Supreme Court seemed to think it could not, in the case of *Lawton* v. *The Commissioners of Highways,* 2 Caines R. 182."

"The court will not issue an injunction to restrain public officers from issuing bonds as they are authorized by law, upon a mere apprehension that the public officer who is designated to receive them will misapply their avails."   *Faulkner* v. *Metcalf,* 43 Barb. 255.

I think the court erred in overruling the demurrer.

*L. Barbour* and *C. P. Jacobs,* for appellants.

*H. C. Newcomb, J. L. Mitchell,* and *W. A. Ketcham,* for appellees.